[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No.  14-15484
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-00180-KOB-JEO

STEPHEN G. BURKE,

Plaintiff–Appellant,

versus

TIMOTHY BOWNS,
WILLIAM TIDWELL,
WILLIE SAMUEL,
DENISE FAIRES,
CONSTANCE REESE,
RAYMOND HOLT,
BECKY CLAY,
FEDERAL BUREAU OF PRISONS,

Defendants–Appellees.
_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(June 27, 2016)

Before TJOFLAT, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Stephen Burke ("Plaintiff"), a prisoner in the custody of the Bureau of Prisons, brought a *pro se Bivens*[1] action against various federal prison officials ("Defendants") alleging violations of his First and Eighth Amendment rights. The district court entered summary judgment in favor of Defendants as to each of Plaintiff's claims. Plaintiff appealed, arguing that (1) the magistrate judge erred by not *sua sponte* reconsidering Plaintiff's motion for additional discovery after the judge had previously denied the motion as being premature; (2) the magistrate judge erred by not affirmatively inviting Plaintiff to view Defendants' video evidence; (3) the district judge erred by denying Plaintiff's motion to convert his unsworn response into a sworn declaration; and (4) summary judgment was improper as to various of his claims. With respect to Plaintiff's first three arguments, we find no error. We also affirm the district court's entry of summary judgment in favor of Defendants.

## I. BACKGROUND

### A. Factual Background

Plaintiff is currently serving a life sentence for conspiracy to commit robbery, robbery, being a felon in possession of a firearm, bank robbery, and carjacking. During the events giving rise to this action, Plaintiff was a prisoner in

---

[1] *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

the Special Management Unit[2] (SMU) at the Federal Correctional Institute in Talladega, Alabama. Plaintiff's suit arises out of three discrete incidents that occurred within the SMU.

### 1. The July Incident

Plaintiff alleges that on July 8, 2009, Associate Warden Becky Clay and Lieutenant Timothy Bowns "showed up at [Plaintiff's] cell door and told [him] to cuff up" so that he could be moved to a new cell.[3] Plaintiff concedes that he refused to submit to hand restraints. Instead, according to Lieutenant Bowns, Plaintiff barricaded his cell's food slot with his mattress, tied a shirt over his face, and exhibited signs of "imminent . . . violence." Plaintiff admits that Drug Treatment Specialist Eric Dryden attempted, unsuccessfully, to diffuse the situation by using so-called confrontational avoidance measures. He then reported to Warden Constance Reese, who asked that Dryden speak with Plaintiff one last time. When that proved ineffective, Reese authorized a use-of-force team to effectuate the cell move and approved the use of chemical agents if necessary.

---

[2] "The SMU is a non-punitive unit for very disruptive inmates who require greater management to ensure the safety, security, and orderly operation of federal prisons. The SMU houses high security inmates from other prisons throughout the federal prison system." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1093 (11th Cir. 2014). Plaintiff was referred to the SMU based on his assaultive behavior at the United States Penitentiary Big Sandy in Inez, Kentucky.

[3] Plaintiff alleges that he was being moved so that he could be placed in a cell with his "known enemies." Defendants contend that the July 8 move was "a routine cell rotation."

3

Lieutenant Bowns gave Plaintiff one final opportunity to comply, which Plaintiff refused.

The use-of-force team employed a "ram tool" (essentially, a long metal rod) to move the mattress away from the food slot. Lieutenant Bowns then ordered Captain Bernard Halloran to disperse pepper spray into Plaintiff's cell. Defendants contend that the first burst of pepper spray lasted for two seconds and, when Plaintiff remained non-compliant, a second burst was applied. Plaintiff's sworn declaration states that the guards emptied two full cans of pepper spray into his cell. Plaintiff maintains that he was "totally blind and almost totally unconscious" face-down on the ground with his hands out to the side when the use-of-force team entered his cell. Plaintiff's declaration also states that Officer William Tidwell placed Plaintiff's head and neck into an "arm bar" hold and "slam[med] [Plaintiff's] face into a concrete slab."

Video footage shows that after Plaintiff was restrained, the use-of-force team carried him to the showers to be rinsed off. Plaintiff remained in arm and leg restraints through July 13 at 11:00am.

### 2. The September Incident

The second incident giving rise to this action occurred on September 22, 2009. Two officers were escorting Plaintiff from the recreation yard into the

4

facility.  He allegedly wore handcuffs and leg irons.  As Plaintiff entered the facility, Officer Tidwell scanned Plaintiff with a handheld metal detector.

Plaintiff and Defendants provide different accounts of what happened next. Plaintiff's sworn complaint states that he sneezed on Tidwell.  Plaintiff asserts that, in response, Tidwell "slammed" Plaintiff, "fully restrained and defenseless," face first into the floor.  Tidwell allegedly placed Plaintiff into an "arm bar" hold and "chastised Plaintiff for having filed an [a]dministrative [] [complaint] against [Tidwell] [for] the July 8[] incident."  Plaintiff avers that the arm bar hold resulted in "major contusions to his eye and cheekbone, and injuri[es] [to] his back and neck."

In contrast, Officer Tidwell avers that as he was scanning Plaintiff's foot, Plaintiff spit on the back of his head.  Officer Robert Mayer (one of the officers who had escorted Plaintiff inside from the recreation yard) also stated in a sworn declaration that he saw Plaintiff spit on Tidwell.  Tidwell attests that after Plaintiff spit on him, he "immediately placed [Plaintiff] on the floor and held him in place until enough responding staff arrived," at which point Tidwell walked away. Tidwell acknowledges that he secured Plaintiff's head on the floor so that Plaintiff would not be able to spit on anyone.  Similarly, Officer Mayer explained that, after Plaintiff spit on Tidwell, the two officers "immediately placed [Plaintiff] on the floor.  While on the ground, [Officers Tidwell and Mayer] held [Plaintiff] in place

5

until more staff arrived." The officers who arrived stated that they did not see Tidwell strike or use an arm-bar hold on Plaintiff or otherwise "use excessive force" against him. A memorandum concerning the incident states that Plaintiff suffered "mild redness and swelling on the right side of the face in the area of the malar region" but that he had "no cuts or abrasions." He was prescribed Tylenol as treatment.

### 3. The October Incident

The final incident occurred on October 22, 2009. Plaintiff's and Defendants' accounts of the incident differ. Plaintiff's unsworn response to Defendants' summary judgment motion asserts that "[d]uring th[e] entire week leading up to [this incident], the entire [facility] was denied recreation and showers for no reason." Upset by this state of affairs, Plaintiff "packed up [his] property and [] jacked the food slot [to his cell,] demanding [his] recreation and a shower." Plaintiff's sworn complaint states that in response, Officer Tidwell emptied a full fire extinguisher into Plaintiff's cell, causing severe injury to Plaintiff's lungs and eyes, including temporary blindness.

According to Defendants, Plaintiff "refused to allow his food slot to be closed, threw feces on staff members, and then set his laundry bag on fire and tossed it in front of his cell door." Officer Tidwell sprayed the laundry bag with a fire extinguisher "as [Plaintiff] continued to throw items out of his cell." He did

not aim the extinguisher into Plaintiff's cell and testified that doing so would have been impossible from where he stood.

In light of Plaintiff's conduct, Warden Reese authorized a use-of-force team. Lieutenant Willie Samuel ordered Plaintiff to submit to handcuffs multiple times. According to Lieutenant Samuel, Plaintiff refused and continued to throw feces out of his cell. The use-of-force team attempted to enter Plaintiff's cell, but Plaintiff had jammed the lock. A locksmith was summoned. Officer Rodney Jones (who is not a defendant in this action) states in his declaration that Plaintiff attempted to prevent the locksmith from unlocking Plaintiff's cell door, at which point Lieutenant Samuel ordered Officer Jones to spray approximately six rounds of pepper spray into Plaintiff's cell through the cell's food slot. Once the lock was cleared, the team entered Plaintiff's cell, subdued him, and cuffed his hands and feet. Plaintiff's sworn complaint states that Officer Tidwell "gratuitously kick[ed] [Plaintiff's] head and skull." Plaintiff's response to Defendants' summary judgment motion states that, after reviewing Defendants' evidence, he realized that Officer Darren Parker (who is not a defendant in this action) was actually the person who had kicked Plaintiff in the head.[4]

As soon as Plaintiff was restrained, he was taken to the health services unit for evaluation. He received treatment for a "three-inch superficial laceration" with

---

[4] Parker's affidavit states that he accidentally tripped over another team member after Plaintiff was restrained.

mild bleeding on the top of his head as well as small abrasions above his eyebrow and on the inside of his left wrist.  The physician's assistant who treated Plaintiff stated in her declaration that she did not believe Plaintiff's head injuries were "consistent with a kick from a boot or shoe."  A memorandum to Warden Reese from the nurse who helped treat Plaintiff states that no other injuries were found during a head-to-toe evaluation of Plaintiff.

Plaintiff was placed in four-point restraints for approximately six hours, during which time he claims he was bleeding and was forced to urinate and defecate on himself.  Multiple Defendants stated in their sworn declarations that they did not observe Plaintiff urinate or defecate on himself and, if they had, they would have cleaned him up and given him a change of clothes immediately.

## B. Procedural History

Plaintiff sued Reese, Clay, Faires, Bowns, Samuel, and Tidwell, along with Raymond Holt, a regional director of the Bureau of Prisons, under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).[5]  The case was referred to a magistrate judge, who issued an Order for a Special Report that, among other

---

[5]  The magistrate judge correctly held that damages claims against Defendants in their official capacity were barred by the doctrine of sovereign immunity. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69–72 (2001).  Plaintiff did not dispute this ruling in his objections to the magistrate judge's R&R, and he does not dispute it on appeal.  Plaintiff also sued the Bureau of Prisons.  The magistrate judge recommended summary judgment in favor of the Bureau on sovereign immunity grounds and also because *Bivens* does not extend to federal agencies. *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994).  Plaintiff did not challenge the district court's grant of summary judgment in favor of the Bureau in his objections to the R&R, and he does not challenge the ruling on appeal.

things, set out the court's understanding of Plaintiff's claims.  The order required Plaintiff to "notify the court within twenty (20) days after the date of th[e] order whether the court has misunderstood or misconstrued the claims pled in the complaint."  In addition, the order directed each Defendant to review Plaintiff's claims and to collectively produce a Special Report presenting "the sworn statement of all persons having knowledge of the facts relevant to the claims."  The order provided that the Report would serve as Defendants' answer to Plaintiff's complaint.  The order required the parties to "make certain initial disclosures in lieu of discovery" and provided that there would be no additional discovery by the parties except with express leave of the court.  Finally, the order stated that if the court determined that Defendants' Report should be treated as a motion for summary judgment, the court would notify the parties by separate order.  Plaintiff would then be permitted to file affidavits, documents, and other materials for the court to consider in its summary judgment analysis.

After the magistrate judge issued his order but before Defendants filed their Special Report, Plaintiff moved for production of documents under Federal Rule of Civil Procedure 34.[6]  The magistrate judge construed this request as a motion to compel discovery and denied the motion as "premature" because Defendants had

---

[6] Rule 34 governs requests for production of documents and electronically stored information, among other things.  The magistrate judge's earlier order stated that any requests for discovery beyond that provided in the initial disclosures would require the court's preapproval.

not yet filed their Special Report.  Defendants then filed their Report, and the magistrate judge issued an order explaining that he would consider the Report as a motion for summary judgment.  The order directed Plaintiff to respond within 20 days.  Plaintiff filed a response that set forth his version of the facts and his argument as to why summary judgment should not be granted.  Plaintiff included various attachments with his response, including his sworn declaration.

Before ruling on Defendants' summary judgment motion, the magistrate judge ordered Defendants to produce the videotapes that were referenced in their Special Report.  After the judge issued a protective order, which specifically noted the circumstances under which Plaintiff could view the footage, Defendants produced a DVD containing footage of the July and October incidents, but not the September incident.  After reviewing the footage and other evidence, the magistrate judge issued a Report and Recommendation ("R&R") recommending that the district court enter summary judgment in favor of Defendants.  The magistrate judge did not address Defendants' invocation of qualified immunity in their Special Report.

Plaintiff filed objections to the R&R, and, on the same day, moved to amend his response to Defendants' Special Report.  Specifically, Plaintiff sought to convert his entire response into a sworn declaration.  The district judge adopted the

R&R, denied Plaintiff's motion to amend, and entered final judgment. Plaintiff then filed a duplicate motion to amend, which the court denied. Plaintiff appealed.

## II. DISCUSSION

### A. Motion for Additional Discovery

After the magistrate judge issued his order directing Defendants to file a Special Report but before Defendants filed their Report, Plaintiff moved for additional discovery. The magistrate judge denied Plaintiff's motion as being premature because Defendants had not yet filed their Special Report. Plaintiff did not seek the court's approval for additional discovery within 30 days of the date of service of Defendants' Report. Plaintiff now challenges the district court's ruling that the magistrate judge did not err by failing to *sua sponte* consider Plaintiff's earlier motion for additional discovery after Defendants filed their Special Report. Plaintiff contends that he did not know that he needed to refile his motion after the Report was filed.

Discovery rulings "should not be overturned 'unless the district court has abused its discretion and such abuse has resulted in substantial harm to the party seeking relief.'" *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1413 (11th Cir. 1994), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) (quoting *Arabian Am. Oil Co. v. Scarfone*, 939 F.2d 1472, 1477 (11th Cir. 1991)). The district court did not abuse its discretion in affirming the magistrate judge's denial

of Plaintiff's request for further discovery. The magistrate judge's Order for a Special Report stated in all capital letters that there would be no discovery—other than the initial disclosures required by the order—without the express leave of the court. The order further provided that, "[t]o request leave of court, the moving party must file with the court a motion specifically identifying the nature of the discovery sought and the reason the initial disclosures . . . were inadequate to provide the information sought by discovery." Furthermore, the order states—again, in all capital letters—that any such motion must be filed within 30 days from the date of the certificate of service on the Special Report. Thus, the order makes clear that in order to obtain additional discovery, a party had to file a motion *after service of the Special Report*. Plaintiff neglected to do so.

What truly dooms Plaintiff's argument, however, is the magistrate judge's order denying Plaintiff's motion for additional discovery. In that order, the magistrate judge explained that "[i]n the event [] [D]efendants do not provide the requested information in their Special Report, [P]laintiff may renew his motion." Thus, Plaintiff was on notice that if the Report did not supply the discovery he sought, he would need to renew his motion. Having failed to do so, Plaintiff cannot now complain that he should have been granted additional discovery.

In any event, the magistrate judge almost certainly would have rejected Plaintiff's motion for further discovery had it considered the motion *sua sponte*

after Defendants filed their Special Report.  First, Plaintiff's original motion was exceedingly broad in its description of requested materials.  For example, Plaintiff's motion asked for, *inter alia*, "[a]ny designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly, or, if necessary, after translation by the responding party into a reasonable usable form[] or, any tangible thing related to the [three] incidents . . . ."  Plaintiff's motion was equally vague with respect to how such evidence would satisfy his burden of demonstrating a genuine dispute of material fact.  Second, Plaintiff's motion did not comply with the magistrate judge's requirement that a motion for additional discovery explain why the initial disclosures were inadequate.  These shortcomings likely would have led the magistrate judge to reject Plaintiff's motion had it been considered on the merits.

## B. Video Evidence

Defendants submitted a DVD containing four videos to the district court. The first video shows Defendants removing Plaintiff from his cell during the July incident, the second and third videos show Defendants removing Plaintiff from his cell during the October incident, and the fourth video shows a restraints check following the October incident.  The videos were taken by prison staff using a

13

handheld video camera.  Defendants maintain that no video exists for the September incident.

On appeal, Plaintiff argues that the magistrate judge erred by not inviting him to view Defendants' video footage.  The district court rejected this argument, finding that the protective order made clear that Plaintiff would need to seek leave of court to view the video footage.  Having failed to request an opportunity to view the videos, the district court held that Plaintiff's argument that the court never permitted him to view the footage lacked merit.  As above, we review the district court's decision to affirm the magistrate judge's discovery orders for an abuse of discretion.  *Cox*, 17 F.3d at 1413.  The thrust of Plaintiff's argument on appeal, as in the district court, is that he was not aware that Defendants had produced video evidence, nor was he aware that he had to request to view the videos.  Had he known, he would have sought to view that evidence.

We are unpersuaded by Plaintiff's argument.  The magistrate judge ordered Defendants to provide any existing and relevant video evidence on April 22, 2014.  The record shows that the court sent Plaintiff a copy of that order by first class mail.  Defendants responded to the magistrate judge's order on May 7, 2014, noting that they had located relevant video evidence.  Along with the response, Defendants filed a motion requesting that the magistrate judge enter a protective order.  Defendants mailed a copy of their response to Plaintiff that same day.  The

14

magistrate judge entered a protective order on May 9, 2014.  Again, the court mailed a copy of the order to Plaintiff.  The magistrate judge did not issue his R&R until July 9, 2014.  Plaintiff has not produced any evidence to suggest that he did not receive Defendants' various court filings or the magistrate judge's order.  Consequently, we reject Plaintiff's assertion that he was not aware that Defendants had provided the court with video evidence.

We are also unpersuaded by Plaintiff's contention that he did not know he had to request an opportunity to review the footage.  Granted, the magistrate judge's protective order did not expressly state that Plaintiff would have to ask to see the videos.  But it did state that "[t]he material produced may not be generally released to Plaintiff but the contents may be viewed by Plaintiff, if this Court so orders, only in restricted and protected areas provided by the Bureau of Prison officials or employees."  This was sufficient to put Plaintiff on notice that if he wished to view the videos, he would need to take action to do so.  Yet Plaintiff made no attempt to inquire as to how he might review the footage.  In addition, Plaintiff has failed to explain how his case was prejudiced by the fact that he did not see the videos, and we do not perceive substantial harm.[7]  *Cox*, 17 F.3d at

---

[7]  Plaintiff did argue in his objections to the R&R that he was prejudiced because if he had been able to view the videos, he would have realized that Defendants had withheld certain video recordings from stationary cameras that record 24 hours a day.  In a similar vein, Plaintiff argues on appeal that the district court granted summary judgment based on incomplete evidence due to the missing videos.  But we have no evidence that Defendants violated the magistrate judge's

15

1413. Thus, the district court did not abuse its discretion in rejecting Plaintiff's argument concerning the video evidence.

## C. Plaintiff's Response to Defendants' Special Report

After Defendants filed their Special Report, the magistrate judge notified the parties that he would treat the Report as a motion for summary judgment. Accordingly, the magistrate judge directed Plaintiff to submit any affidavits or other evidence he had to rebut Defendant's summary judgment motion. Plaintiff submitted a Response to Defendants' Motion to Dismiss. Attached to his response was a Declaration in Response to Defendants' Motion for Summary Judgment. In analyzing Defendants' summary judgment motion, the magistrate judge deemed Plaintiff's declaration to be a sworn statement that could be used as evidence. However, the judge declined to consider Plaintiff's response as evidence.

Approximately two weeks after the magistrate judge issued his R&R, Plaintiff wrote a letter to the clerk of court explaining that he had intended to make both his response and the declaration a single sworn statement. Plaintiff later filed his objections to the R&R, and, on the same day, moved to amend his response to Defendants' motion for summary judgment. Attached to his motion was a

---

ordered and neglected to provide any requested video footage. Plaintiff's conclusory assertions do not suffice at the summary judgment stage.

16

declaration (executed pursuant to 28 U.S.C. § 1746[8]) stating that he swore under

penalty of perjury that his response to Defendants' summary judgment motion was

"true and correct to the best of [his] knowledge."  Plaintiff's motion to amend

requested that the magistrate judge "allow [Plaintiff] to amend his RESPONSE in a

manner that will render the RESPONSE a 'sworn' statement."  The magistrate

judge did not rule on Plaintiff's motion to amend.  The district judge, in her

opinion adopting the R&R, ruled that "[P]laintiff's . . . motion [to amend] is due to

be denied."  The district judge reasoned that (1) Plaintiff himself referred to his

response as a "brief submitted with [his sworn] declaration" and (2) the magistrate

judge considered the relevant arguments presented in Plaintiff's response.  On

---

[8]  Section 1746 provides:

> Wherever, under any law of the United States or under any rule,
> regulation, order, or requirement made pursuant to law, any matter is
> required or permitted to be supported, evidenced, established, or proved
> by the sworn declaration, verification, certificate, statement, oath, or
> affidavit, in writing of the person making the same (other than a
> deposition, or an oath of office, or an oath required to be taken before a
> specified official other than a notary public), such matter may, with like
> force and effect, be supported, evidenced, established, or proved by the
> unsworn declaration, certificate, verification, or statement, in writing of
> such person which is subscribed by him, as true under penalty of perjury,
> and dated, in substantially the following form:
>
> > (1) If executed without the United States: "I declare (or certify,
> > verify, or state) under penalty of perjury under the laws of the
> > United States of America that the foregoing is true and correct.
> > Executed on (date).  (Signature)".
> >
> > (2) If executed within the United States, its territories, possessions,
> > or commonwealths: "I declare (or certify, verify, or state) under
> > penalty of perjury that the foregoing is true and correct.  Executed
> > on (date).  (Signature)".

17

appeal, Plaintiff contends that the district court erred by denying his motion to amend.

Defendants filed their Special Report on May 1, 2012. On May 18, 2012, the magistrate judge notified the parties that he would treat the Special Report as a summary judgment motion and that Plaintiff would have 20 days to respond to the motion. Plaintiff moved for an extension on two occasions, and the magistrate judge granted both motions, postponing the final deadline to respond to the summary judgment motion to August 31, 2012. Plaintiff filed his response and declaration on August 20, 2012. Almost two years later, the magistrate judge issued his R&R. Then, on August 25, 2014, Plaintiff moved to convert his response into a sworn statement—*almost two years to the date after the deadline for responding to Defendants' Special Report*. In the interim, the magistrate judge issued an R&R, and the district judge may have begun her review.

Under these circumstances, the district court could have,[9] though was not obligated to, allow Plaintiff to convert his response into a sworn declaration and consider it for summary judgment purposes. Adding Plaintiff's response to the body of evidence to be considered would likely have required the magistrate judge or the district judge to redo the analysis that the magistrate judge had already

---

[9] *See* 28 U.S.C. § 636(b)(1)(C) ("A [district court] judge . . . may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. *The judge may also receive further evidence* or recommit the matter to the magistrate judge with instructions." (emphasis added)).

completed. Judges impose deadlines for many reasons, not the least of which is to promote judicial efficiency and speedy resolution for the parties. A district court judge does not abuse her discretion by denying a motion that seeks to convert an unsworn statement into a sworn statement—thereby generating new evidence—almost two years after the deadline for responding to a summary judgment motion. *See Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 863–64 (11th Cir. 2004) (holding that the district court did not abuse its discretion by denying a request for a fifth extension to respond to a summary judgment motion and by refusing to consider the untimely responses to defendants' motions for summary judgment).

Plaintiff's status as a *pro se* litigant does not alter our conclusion. The magistrate judge's order instructing Plaintiff to respond to Defendant's summary judgment motion clearly stated that Plaintiff's response would be due within 20 days. And Plaintiff evidently understood the deadline given that he filed two motions to extend the deadline and then timely filed his response before the final deadline. The magistrate judge also made clear that sworn statements would be necessary to rebut the evidence that Defendants attached to their Special Report.[10] Plaintiff apparently understood this instruction—and the requirements for filing a sworn statement under § 1746—because he attached sworn declarations (one

---

[10] Specifically, the magistrate judge explained that "[t]he party opposing the [summary judgment] motion must respond with counter-affidavits and/or documents to set forth specific facts showing that there is a genuine issue of material fact to be litigated at trial." The judge also attached an explanation of Federal Rule of Civil Procedure 56 to his order.

19

signed by him, and others signed by other prisoners) to his response. Thus, Plaintiff cannot credibly argue that he did not understand the deadline for responding to Defendant's summary judgment motion or how to create a sworn statement that could be used as evidence. The district court was under no duty to grant Plaintiff's eleventh-hour attempt to pad the record with additional facts.

## D. Summary Judgment

### 1. Claims Preserved on Appeal

Defendants argue that Plaintiff has waived all claims against all Defendants other than Officer Tidwell because Plaintiff does not mention any other Defendants by name in his opening brief. Given Plaintiff's *pro se* status, his failure to specifically refer to certain Defendants does not necessarily constitute waiver of his claims against those Defendants. We have previously explained that "[w]hile we read briefs filed by *pro se* litigants liberally, issues not briefed on appeal by a *pro se* litigant are deemed abandoned." *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (citations omitted). Thus, we look to the substance of Plaintiff's arguments on appeal (i.e., the "issues . . . briefed," *id.*) to determine which claims he has preserved. Upon careful review of Plaintiff's briefing, we conclude that Plaintiff has adequately preserved the district court's summary judgment rulings as to the following claims:

- An Eighth Amendment excessive force claim against Defendants Reese and Bowns for the use of pepper spray during the July incident.

- An Eighth Amendment conditions of confinement claim for the July 2009 incident against Defendants Clay, Reese, Tidwell, and Bowns for not properly decontaminating Plaintiff after spraying him with pepper spray.

- An Eighth Amendment excessive force claim against Officer Tidwell for his actions during the September 2009 incident.

- A First Amendment retaliation claim against Officer Tidwell for his statements and actions during the September 2009 incident.

- An Eighth Amendment excessive force claim against Officer Tidwell for allegedly dispersing the entire contents of a fire extinguisher into Plaintiff's cell during the October 2009 incident.

- An Eighth Amendment conditions of confinement claim against Defendants Faires and Reese for the manner in which Plaintiff was restrained following the October 2009 incident.[11]

### 2. Standard of Review

"We review *de novo* the district court's grant of summary judgment, applying the same standard as the district court." *Burton v. Tampa Hous. Auth.*,

---

[11] Notably, none of the remaining claims involves either Lieutenant Samuel or Director Holt. Thus, the district court's grant of summary judgment as to those Defendants stands.

271 F.3d 1274, 1276 (11th Cir. 2001).  In conducting our review, we construe the evidence and draw all inferences in favor of the non-moving party (in this case, Plaintiff).  *Broadcast Music, Inc. v. Evie's Tavern Ellenton, Inc.*, 772 F.3d 1254, 1257 (11th Cir. 2014).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Because Plaintiff proceeded *pro se*, we liberally construe his pleadings. *Trawinski v. United Techs.*, 313 F.3d 1295, 1297 (11th Cir. 2002).  "We also credit the 'specific facts' pled in [his] sworn complaint when considering his opposition to summary judgment."  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986); *Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992)).

### 3.  Qualified Immunity

Defendants invoked the affirmative defense of qualified immunity in their Special Report.  However, neither the magistrate judge nor the district judge engaged in qualified immunity analysis.  On appeal, Defendants renew their argument that they are entitled to qualified immunity as to each of Plaintiff's claims.

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates

'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "'To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority.'" *Caldwell*, 748 F.3d at 1098 (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1233–34 (11th Cir. 2003)). Plaintiff does not dispute that Defendants were exercising discretionary functions at all relevant times. Consequently, Plaintiff bears the burden of showing that Defendants are not entitled to qualified immunity. *Brooks v. Warden*, 800 F.3d 1295, 1306 (11th Cir. 2015); *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007). To meet this burden, Plaintiff must prove that (1) Defendants violated a constitutional right and (2) this right was clearly established at the time of the alleged violation. *Caldwell*, 748 F.3d at 1099. Regarding the first prong, at this stage we ask whether a jury could conclude that a violation occurred based on the evidence in the record. If so, we proceed to the second prong and ask whether, assuming a violation, "it would [have] be[en] clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Cottone v. Jenne*, 326 F.3d 1352, 1359 (11th Cir. 2003). Ultimately, we conclude that Defendants did not violate any of Plaintiff's constitutional rights. Accordingly, we do not proceed to the "clearly established" prong on any of Plaintiff's claims. *See Dalrymple*, 334 F.3d at 997 ("Because we

23

find no constitutional violation . . . , we need not address whether the constitutional rights at issue were clearly established.").

### 4. Excessive Force Claims

Standard for Excessive Force Claims

The Eighth Amendment, which prohibits the infliction of "cruel and unusual punishments" against convicted inmates, governs Plaintiff's excessive force claims. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). "Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm.'" *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986) (alteration omitted)).

Excessive Force Claim for the July Incident

Plaintiff claims that Warden Reese and Lieutenant Bowns violated his Eighth Amendment rights by ordering Captain Halloran (who is not a defendant in this action) to empty two full cans of pepper spray into Plaintiff's cell.[12] The

---

[12] Because it is not necessary to our disposition, we bracket off the threshold question whether Warden Reese and Lieutenant Bowns can be liable under *Bivens* for ordering the use of an allegedly unconstitutional amount of pepper spray when Plaintiff does not assert that Reese or Bowns ordered that a particular amount of spray be used. *See Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) ("It is well established that § 1983 claims may not be brought against supervisory officials on the basis of vicarious liability or respondeat superior. However, supervisors are liable . . . 'either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising

24

pepper spray allegedly "saturated his body, entered bodily orifices, and caused severe burning and [temporary] blindness."

Plaintiff contends that Captain Halloran sprayed two cans of pepper spray into Plaintiff's cell, but the video evidence makes clear that Halloran applied only two very brief spurts of pepper spray, the first spurt lasting for about two seconds, and the second for less than one second. We do not credit assertions in Plaintiff's sworn declaration to the contrary. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007) ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape."). Accordingly, we consider only whether a jury could conclude that Reese and Bown violated Plaintiff's Eighth Amendment rights when Captain Halloran used a modest amount of pepper spray under the circumstances.

The standard that governs excessive force claims, as laid out above, is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). Factors relevant to this determination include "the need for the

official and the alleged constitutional violation.'" (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (other citation omitted)). Although *Keating* involved a § 1983 action, "we 'generally apply § 1983 law to *Bivens* cases.'" *Wilson v. Blankenship*, 163 F.3d 1284, 1288 (11th Cir. 1998) (quoting *Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995) (per curiam).

application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Skrtich*, 280 F.3d at 1300. When considering these factors, we afford "a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009) (per curiam) (quotation marks omitted).

Defendants' video evidence shows that Plaintiff had refused numerous requests to submit to handcuffs. Video footage also shows that Plaintiff was unreceptive to confrontational avoidance measures. It is undisputed that Drug Treatment Specialist Eric Dryden spent 15 minutes attempting to persuade Plaintiff to submit to handcuffs before any pepper spray was used. Moreover, Plaintiff was aware that a use-of-force team had been assembled and was warned that pepper spray would be used if he did not comply with officers' orders. In response, Plaintiff shouted expletives at the officers and was otherwise hostile. Under these circumstances, there is no question that the officers had a significant need to bring Plaintiff under control. *See Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990) ("Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding.").

Here, as explained above, Halloran applied two short bursts of pepper spray. This minimal amount of force was proportional to the degree of risk posed by Plaintiff's behavior. And, as explained in detail above, Defendants went to great lengths to temper the severity of the force used, and indeed sought to avoid the use of force altogether. Accordingly, no reasonable jury could find that Reese and Bowns ordered the use of pepper spray "maliciously and sadistically to cause harm" to Plaintiff rather than to restore discipline. *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008) ("readily" concluding that the use of pepper spray following a prisoner's second failure to obey an officer's order to return to his cell is constitutional), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010); *Baldwin v. Stalder*, 137 F.3d 836, 841 (5th Cir. 1998) ("[T]he trial court clearly erred in finding that a two second use of mace, including not allowing immediate washing, was not a *good faith effort* to maintain or restore discipline." (emphasis in original)). *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000) (holding that a "limited application" of chemical agents "to control a recalcitrant inmate . . . should rarely be a proper basis for judicial oversight" (quotations and citation omitted)). Because there is no basis for finding an Eighth Amendment violation based on the use of pepper spray during the July incident, we affirm the district court's grant of summary judgment in favor of Warden Reese and Lieutenant Bowns on this claim.

27

Excessive Force Claim for the September Incident

Plaintiff also claims that Officer Tidwell used excessive force against him during the September incident.  The district court granted summary judgment in favor of Tidwell.  Construing the evidence in favor of Plaintiff, as we must, the relevant facts are these: As Plaintiff was being escorted from the recreation yard in handcuffs and leg irons, he sneezed on Officer Tidwell.  Tidwell, however, believed that Plaintiff had spit on him.[13]  In response, Tidwell "slammed" Plaintiff "face-first" to the ground while he was "fully restrained."[14]  Tidwell then pinned Plaintiff to the ground using an "arm bar" hold.  Plaintiff's sworn complaint states that as he was being thrown to the ground, Officer Tidwell "chastised" him for having filed an administrative complaint concerning the July incident.  Plaintiff's complaint also asserts that he suffered "severe injury and major contusions to his eye and cheekbone" as well as "injury to his back."  However, Plaintiff has introduced no "specific facts," *Allen v. Board of Public Education for Bibb County*, 495 F.3d 1306, 1314 (11th Cir. 2007) (quoting *Jeffery v. Sarasota White Sox, Inc.*,

---

[13]  The other officer present, Officer Mayer, stated in his declaration that Plaintiff did spit on Tidwell.  Moreover, there is evidence in the record that Plaintiff had spit on officers on a number of other occasions.  Nevertheless, at this juncture, we credit Plaintiff's statement in his sworn declaration that he only sneezed.

[14]  In addition to his own sworn complaint, Plaintiff submitted a sworn declaration addressing the incident from another prisoner, Damarcus D. Law.  He averred that he "witnessed [Officer] Tidwell attack [] [Plaintiff] while [Plaintiff] was coming back from recreation in handcuffs and leg irons."  Law further swore that Tidwell attacked Plaintiff "for no reason," that Tidwell used an illegal arm-bar hold on Plaintiff, and that Plaintiff suffered "massive injuries to [his] face, neck and back" as a result.

64 F.3d 590, 593–94 (11th Cir. 1995)), to refute Defendants' health services report, which states that Plaintiff's only injuries were "[m]ild swelling and redness on the right side of the face" and slight tenderness in the right side of his neck and back.

Again, the "core judicial inquiry" is whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. However, "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." *Id* at 9. Taking Plaintiff's account as true, the attack was no more than a "*de minimis* use[] of physical force." *Id.* at 9–10 ("The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." (quotation marks omitted)). First, the type of force allegedly used by Officer Tidwell was not "of a sort repugnant to the conscience of mankind." *Id.* at 10 (quotation marks omitted). Instead, it was materially similar to the "push or shove" referenced in *Wilkins v. Gaddy*, which "almost certainly fails to state a valid excessive force claim." 559 U.S. 34, 37–38 (2010). Second, as noted above, Plaintiff has not adequately refuted Defendants' report showing that he suffered only mild swelling and tenderness when treated only 30 minutes after the incident. *See id.* at 38 (explaining that the absence of a serious injury is a relevant though not dispositive consideration in excessive force

29

analysis).  Thus, even taking Plaintiff's version of events as true, any force was *de minimis*, and the district court did not err in concluding that no genuine issue of material fact existed as to whether Officer Tidwell used excessive force in violation of the Eighth Amendment.[15]

In the alternative, even if the force used was not *de minimis*, it still did not run afoul of the Eighth Amendment.  Here, it is undisputed that Officer Tidwell was struck by Plaintiff's bodily fluid and believed that Plaintiff had spit on him.  And the record amply indicates that Plaintiff had a history of spitting on officers.  Moreover, the amount of force used was minimal and appropriately calibrated to the threat posed by Plaintiff.  Indeed, it is difficult to conceive of less severe force that Tidwell could have used in the circumstances.  Accordingly, even assuming *arguendo* that Tidwell used more than *de minimis* force, that force was not malicious and sadistic; to the contrary, it was a good faith effort to restore discipline.

<u>Excessive Force Claim for the October Incident</u>

Plaintiff's final excessive force claim, arising out of the October incident, also involves Officer Tidwell.  Drawing all reasonable inferences in favor of

---

[15]  We acknowledge that Tidwell's contemporaneous statement concerning Plaintiff's prior administrative complaint is probative of a potentially improper motive, but that motive does not negate the propriety of using a limited amount of force to restrain an inmate believed to have spit on an officer.  *C.f. O'Bryant v. Finch*, 637 F.3d 1207, 1220 (11th Cir. 2011) ("Stated another way, even if some impermissible reason had entered into [the officers'] decision-making process . . . , [the prisoner] would have been disciplined anyway . . . .").

Plaintiff, the relevant facts are as follows:  Plaintiff lit his laundry bag on fire and threw the flaming bag out of his cell.[16]  Tidwell allegedly seized this opportunity to "disperse[] the contents of [a] [fire] extinguisher . . . into [Plaintiff's] cell."[17]  Plaintiff asserts that this exposure to chemicals "suffocate[ed] him and caus[ed] injury to his lungs, and temporarily blind[ed] him, causing injury to his eyes."

Even construing the disputed facts in favor of Plaintiff, his excessive force claim for the October incident must fail.[18]  The need to extinguish a fire in a prison is unquestionably great as a matter of prisoner safety, officer safety, and public safety.  It is undisputed that the fire had originated from Plaintiff's cell.  Thus, spraying a single fire extinguisher into Plaintiff's cell was a response commensurate to the significant threat posed by a prison fire.  Under these circumstances, it was not malicious and sadistic to spray the extinguisher into Plaintiff's cell.  *Compare Beckford v. Protuondo*, 151 F. Supp. 2d 204, 209 (N.D.N.Y. 2001) (denying officers' motion for summary judgment in a § 1983

---

[16]  Plaintiff did state in his unsworn response to Defendants' summary judgment motion that a prisoner in a neighboring cell had lit the laundry bag on fire and tossed it out of his cell, but statements in an unsworn response do not constitute evidence that can be considered at the summary judgment stage.

[17]  Tidwell asserts that he sprayed a fire extinguisher at the flaming laundry bag outside of Plaintiff's cell.

[18]  Plaintiff's complaint also alleges that later on during this same incident, as the use-of-force team was subduing Plaintiff, Tidwell kicked Plaintiff in the head.  After reviewing Defendants' summary judgment motion and attached documents, Plaintiff realized that Officer Darren Parker was actually the person who kicked Plaintiff in the head.  Plaintiff did not seek leave to amend his complaint to add Parker as a Defendant.  Now, any excessive force claim against Officer Tidwell for the October incident is based solely on Plaintiff's claims about the fire extinguisher.

31

case alleging excessive force where the prisoner started a fire in his cell, officers put out the fire, and, *after* the fire was extinguished, multiple officers sprayed the prisoner with fire extinguishers).  Consequently, we affirm the district court's grant of summary judgment in favor of Officer Tidwell on Plaintiff's claim that Tidwell used excessive force against him by spraying a fire extinguisher into Plaintiff's cell.

### 5. Conditions of Confinement Claims

Standard for Conditions of Confinement Claims

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  A two-part analysis governs Eighth Amendment challenges to conditions of confinement.[19]  *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).  First, the prisoner must show that the conditions of his confinement are objectively "serious" or "extreme."  *Id.*  At the very least, this requires a showing that the challenged condition "poses an unreasonable risk of serious damage to [the prisoner's] [] health or safety."  *Id.* (brackets and

---

[19]  The magistrate judge construed Plaintiff's claims concerning the manner in which he was restrained following the July and October incidents as conditions of confinement claims.  Neither party disputed this framing of Plaintiff's claims.  However, after setting out the proper standard for conditions of confinement claims in his prefatory discussion, the magistrate judge applied the standard for excessive force claims.  This is problematic insofar as the "deliberately indifferent" standard that governs conditions of confinement claims is different than the "malicious and sadistic" standard that governs excessive force claims.  Defendants' brief also incorrectly applies the excessive force standard to Plaintiff's conditions of confinement claims.

quotation marks omitted).  Second, the prisoner must show that the prison officials subjectively acted with "deliberate indifference" to the challenged condition.  *Id.* "In our circuit, to find deliberate indifference on the part of a prison official, a plaintiff inmate must show:  (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Thomas v. Bryant*, 614 F.3d 1288, 1312 (11th Cir. 2010).

<u>Conditions of Confinement Claim for the July Incident</u>

Plaintiff asserts that Warden Reese, Associate Warden Clay, Lieutenant Bowns, and Officer Tidwell subjected him to unconstitutional conditions of confinement following the July incident.  Specifically, Plaintiff's sworn complaint states that these Defendants placed him in a "belly chain" as well as hand and leg restraints for five days "without permitting him, despite complaints and requests, to shower or otherwise decontaminate himself of the chemical agents . . . , which resulted in continuous excruciating burning throughout his body and development of lasting and painful sores."  Plaintiff later conceded that he was permitted to rinse off following the incident but now argues that he did not receive a *proper* decontamination shower or change of clothes.  Plaintiff further states that he was not able to eat or drink for the five days that he was in full ambulatory restraints and that Officer Tidwell taunted him concerning his inability to eat.

In order to withstand Defendants' summary judgment motion, Plaintiff must raise a genuine issue of material fact as to both the objective and subject prongs of a conditions of confinement claim, i.e., (1) whether the conditions complained of amounted to an objectively extreme deprivation and (2) whether the Defendants involved were deliberately indifferent to the substantial risk of serious harm caused by such conditions. Because it is clear that Plaintiff has not created a genuine issue of material fact with respect to the second prong, we begin and end our analysis there.

Plaintiff has not produced any evidence to suggest that Defendants had subjective knowledge of a risk of serious harm to Plaintiff, much less a disregard for such a risk. *Thomas*, 614 F.3d at 1312. To the contrary, the totality of the evidence demonstrates that Defendants had great concern for Plaintiff's well-being and that they had no knowledge of Plaintiff's alleged pain, burning, and sores. First, Defendants introduced a log showing that Plaintiff received three meals per day during the relevant period. Plaintiff did not present evidence that he was unable to actually eat the food provided to him nor that he complained to Defendants that he was unable to eat.[20] Moreover, the record shows—and Plaintiff does not dispute—that while Plaintiff was in ambulatory restraints, an officer

---

[20]  Plaintiff does argue in his response to Defendants' summary judgment motion that he was unable to eat due to the manner in which his hands were cuffed, but that argument does not constitute evidence.

checked on him every 15 minutes and a lieutenant checked on him every two hours to determine whether he had calmed down enough to have the restraints removed. *C.f. Williams v. Burton*, 943 F.2d 1572, 1575 (11th Cir. 1991) ("The record supports the decision that adequate precautions were taken to safeguard the prisoner's physical well-being through constant monitoring and examinations by medical personnel."). It is also undisputed that Plaintiff repeatedly refused Defendants' attempts to perform a medical assessment.[21] Similarly, it is undisputed that for several days, Plaintiff refused Defendants' offers to remove his ambulatory restraints.

In sum, then, Plaintiff has not introduced any evidence that Defendants were aware of and recklessly disregarded a substantial risk to Plaintiff's health or safety. To the contrary, ample unrefuted evidence shows that Defendants were concerned about Plaintiff's wellbeing, but Plaintiff impeded Defendants' ability to become aware of any potential problems so that they could be rectified. Thus, Plaintiff has not created genuine issue of material fact with respect to Defendants' deliberate indifference to his conditions of confinement following of the July incident. We therefore affirm the district court's grant of summary judgment in favor of Defendants Reese, Clay, Bowns, and Tidwell for Plaintiff's conditions of confinement claim arising out of the July incident.

---

[21] And, notably, Plaintiff received medical attention and treatment as soon as Defendants discovered that he had developed a rash.

35

Conditions of Confinement Claim for the October Incident

Plaintiff also claims that Warden Reese and Associate Warden Denise Faires subjected him to unconstitutional conditions of confinement following the October incident, when Plaintiff was placed into four-point restraints "crucifixion style" for six hours while he was "forced to bleed, urinate, and defecate on himself." As for the objective prong of the conditions of confinement analysis, it is well established in this Circuit that conditions lacking basic sanitation are sufficiently "extreme" and "serious" to pose a substantial risk to Plaintiff's health or safety. *See Brooks*, 800 F.3d at 1303–04 (citing cases in support of the conclusion that it was clearly established that conditions lacking basic sanitation violate a prisoner's Eighth Amendment rights).

But we need not determine whether the particular conditions of which Plaintiff complains lacked proper sanitation because, as with his other conditions of confinement claim, Plaintiff has failed to raise a genuine issue of material fact as to whether Reese and Faires were deliberately indifferent to the conditions of Plaintiff's confinement following the October incident. Simply, Plaintiff has offered no evidence that Reese and Faires knew that Plaintiff was bleeding, urinating, and defecating on himself. Nor does Plaintiff state that he notified anyone that he was bleeding or that he needed to use the restroom. And Defendants' knowledge of the "mere possibility" of certain harm befalling Plaintiff

36

because he was in four-point restraints is insufficient to establish deliberate indifference. *Id.* at 1301 ("The most that can be taken from Brooks's complaint, even in the most favorable light, is that it was *possible* for the events that transpired to occur . . . . But mere possibility is not enough—the plaintiff must plausibly allege a strong likelihood of serious harm, and Brooks has not here. Therefore, his claim must fail." (emphasis in original)).  Accordingly, we affirm the district court's grant of summary judgment in favor of Reese and Faires on Plaintiff's conditions of confinement claim arising out of the October incident.

### 6.  Retaliation Claim

Plaintiff argues that the district court erred by granting summary judgment in favor of Officer Tidwell on Plaintiff's First Amendment retaliation claim arising out of the September incident.  According to Plaintiff's sworn complaint, Tidwell retaliated against him for filing an administrative claim concerning the earlier July incident.  The alleged retaliatory act consisted of Officer Tidwell slamming Plaintiff face-first to the ground while he was restrained and then pinning him down for some time.

"'The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech.'"  *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (quoting *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003)).  In order to prevail on a First Amendment retaliation claim, a prisoner

must show that: "(1) he engaged in constitutionally protected conduct; (2) the defendant's retaliatory act adversely affected the protected conduct; and (3) there is a causal connection between the retaliatory act and the adverse effect on the conduct." *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013). "Once the plaintiff establishes that the protected conduct was a motivating factor behind the harm, the burden of production shifts to the defendant.  The defendant can prevail on summary judgment if [he] can show [he] would have taken the same action in the absence of the protected activity." *Id.* (citation omitted).

We find that Plaintiff has satisfied his burden with respect to the three *prima facie* elements.  Regarding the first element, "it is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing *Farrow*, 320 F.3d at 1248).  Here, Officer Tidwell allegedly retaliated against Plaintiff for his complaint concerning the July incident.  We have not been pointed to a copy of Plaintiff's original internal complaint in the record, but the record does contain Plaintiff's written appeal to the Bureau of Prisons that was filed on November 19, 2009, after the September incident.  That appeal plainly refers to allegedly unconstitutional conditions of

38

confinement resulting from the July incident.[22] We assume without deciding that Plaintiff's original complaint that allegedly occurred prior to the September incident similarly referred to his conditions of confinement. Thus, Plaintiff has satisfied the first element of his First Amendment claim.

On the facts provided in Plaintiff's sworn complaint, the second element is also met. Being slammed face-first into the ground for filing a grievance would likely deter "a person of ordinary firmness" from filing future grievances, even if the force used was minimal. Finally, regarding the third element, Plaintiff averred in his sworn complaint that Officer Tidwell "chastised" for filing an administrative complaint as he was taking Plaintiff to the ground. This constitutes circumstantial evidence of causation. That is, a jury could infer based on Tidwell's remark that his treatment of Plaintiff was prompted by Plaintiff's grievance. Accordingly, Plaintiff has met his burden, and Tidwell can prevail on his summary judgment motion only if he can show that he would have taken the same action absent the protected activity.

We have already explained that Tidwell had a proper motive for throwing Plaintiff to the ground and pinning him down: Tidwell believed that Plaintiff had spit on him. We are convinced that an "[o]bjective prison administrator[] standing in [Tidwell's] shoes" would have taken materially similar action to prevent

---

[22] The complaint also referred to alleged excessive force used against Plaintiff during the July incident.

39

Plaintiff from continuing to spit on officers. *Smith*, 532 F.3d at 1279. A jury could not reasonably conclude otherwise. *O'Bryant*, 637 F.3d at 1219 ("[E]ven assuming *arguendo* that [the prisoner] has shown that [the officers] were subjectively motivated to discipline [the prisoner] because of his grievances, the record shows the [officers] would have taken the same disciplinary actions in the absence of [the prisoner's] protected activity."); *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (addressing a prisoner's retaliation claim, applying the burden-shifting framework, and explaining that, "if taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone"). Accordingly, we affirm the district court's grant of summary judgment in favor of Tidwell.

## E. Plaintiff's Other Arguments

We decline to address Plaintiff's remaining arguments because they are irrelevant to his claims.

## III. CONCLUSION

Finding no error in any of the district court's challenged rulings, we **AFFIRM** the district court's grant of summary judgment in favor of Defendants.

40