[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-13481
_____

D.C. Docket No. 2:06-cv-14201-KMM


GLENN C. SMITH,

                                                                    Plaintiff - Appellant,

versus

FLORIDA DEPARTMENT OF CORRECTIONS,
LARRY BARRINER,
TONI BOWDEN,

                                                                    Defendants - Appellees.
_____

Appeal from the United States District Court
for the Southern District of Florida
_____
(February 20, 2013)

Before TJOFLAT, MARTIN and FAY, Circuit Judges.

PER CURIAM:

    Glenn Smith, a Florida state prisoner, appeals a summary judgment order in

favor of the Florida Department of Corrections ("FDOC").  Smith brought a *pro se*

42 U.S.C. § 1983 civil rights action based on an alleged widespread practice and custom of the FDOC to transfer inmates in retaliation for exercising their First Amendment rights.  On appeal, Smith argues that he was denied fair discovery, but even with limited discovery, he established questions of fact sufficient to survive summary judgment.  After oral argument, reviewing the record, and for the reasons that follow, we vacate the summary judgment and remand for further proceedings consistent with this opinion.

## I.    FACTS

Smith is a Florida state prisoner who is serving consecutive life sentences for convictions of sexual battery, assault, and a lewd and lascivious act upon a child.  More importantly for the case before us, Smith is an extremely litigious inmate, having filed at least ten separate lawsuits against the FDOC and its employees from 2001 to 2006 alone.  Smith – who became a certified inmate law clerk upon incarceration – has taken it upon himself, through grievances and lawsuits, to make what he considers positive social changes to the Florida prison system.[1]

In February 2003, while housed at the Martin Correctional Institute ("MCI"), Smith filed an appeal from a state court's decision in favor of the FDOC

---

[1] Not all of Smith's litigation has been warranted, as many of his claims have been frivolous.  In fact, two of Florida's circuit courts have sanctioned Smith for such claims, prohibiting him from filing any *pro se* documents in those courts.  In a separate matter, the United States District Court for the Southern District of Florida also sanctioned Smith by prohibiting him from proceeding *in forma pauperis* in the federal courts.

and then initiated a separate lawsuit against the FDOC.  Fifteen days after Smith

filed that lawsuit, the FDOC issued an order to transfer him to the Okeechobee

Correctional Institute ("OCI") for the stated reason of "population adjustment."

On the morning of March 18, 2003, Smith was informed that he was being

transferred later that day.  Smith resisted the transfer by refusing to board the bus,

but was ultimately shackled and forced on the bus to OCI.  Upon arriving at OCI,

Smith was given a disciplinary report for disobeying the order to board the bus.

On August 11, 2006, Smith initiated the present case by filing a *pro se*

complaint under § 1983, (1) alleging his transfer to OCI was in retaliation for his

litigation; (2) challenging the constitutionality of a FDOC regulation providing for

disciplinary confinement if an inmate violates what the inmate deems an unlawful

order; and (3) challenging the validity of the disciplinary report he received.  Smith

sought monetary, injunctive and declaratory relief from the Secretary of the FDOC

and Larry Barriner.[2]

The district court dismissed the complaint in its entirety, but, on appeal, this

Court reversed the dismissal of Smith's claim of retaliatory transfer.  *Smith v. Fla.*

*Dep't of Corr.*, 318 F. App'x 726, 728 (11th Cir. 2008).  Finding that Smith's

claims against the Secretary in his official capacity sought prospective injunctive

and declaratory relief, we held that Smith had "alleged facts sufficient to state a

---

[2] Barriner was the captain at MCI at the time of Smith's transfer.

3

claim against [Secretary] McDonough for supervisory liability for permitting
widespread retaliatory transfers . . . .  Smith also alleged a widespread practice and
custom of transferring inmates in retaliation for exercising their First Amendment
rights, thus putting [the Secretary] on notice thereof."  *Id.* at 728-29.

After remand, the parties began discovery, and the FDOC sought leave to
depose the incarcerated Smith.[3]  The court entered an order permitting the
deposition, but warned the FDOC about taking advantage of the *pro se* deponent
and required the FDOC provide Smith a copy of his deposition upon its
completion.  Prior to being deposed, Smith unsuccessfully moved to have counsel
appointed and moved for leave to amend his complaint.  Smith was deposed on
October 24, 2008, but he was not provided a copy of the transcript.[4]

Smith contested several of the FDOC's actions during discovery.  The trial
court granted Smith's first motion to compel, directing the FDOC to provide
responses or objections to Smith's discovery requests.  On the last day of
discovery, Smith filed two additional motions to compel, requesting the court to

---

[3] The FDOC's motion was made pursuant to Federal Rule of Civil Procedure 30(a)(2)(B), which
requires parties obtain leave of court if a deponent is confined in prison.

[4] After Smith opined in his response to the FDOC's motion for summary judgment that he did
not receive the deposition transcript, the FDOC filed a notice stating that it never ordered the
transcript, thus it was unable to provide a copy to Smith.  The FDOC offered no other
explanation as to why it refused to obey the court's order to provide Smith a copy, nor did the
FDOC offer any reason to believe that the court's order was in any way conditioned on the
FDOC ordering a copy of the deposition for itself.  We find such conduct strange and
unacceptable.

4

compel the FDOC to allow Smith to correspond with several named inmates, identified as possible witnesses. The court denied the motions, ordering that Smith could only communicate with other inmates within the rules and regulations of his place of confinement.

The FDOC moved for summary judgment and argued that Smith failed to present sufficient evidence to rebut the non-retaliatory reasons for transfer offered by the FDOC. The FDOC included affidavits from two employees who stated that Smith was one of 50 inmates transferred from MCI for population adjustment and the employee who affected the transfer orders had no personal knowledge of Smith. In his response, Smith argued that discovery was incomplete, that he had not been provided his deposition transcript, and that he had proved a material dispute of facts as to the motivation for his transfer by submitting affidavits from other inmates, which demonstrated the FDOC's widespread pattern of transferring litigious inmates as punishment. The Magistrate recommended – and the court ultimately adopted by paperless order – granting the FDOC's motion because it determined that Smith failed to present evidence beyond temporal proximity and failed to refute the evidence that the FDOC's decision-makers did not know Smith. However, the Magistrate did not address any of the discovery issues or the failure of the FDOC to provide Smith with his deposition transcript.

Smith now appeals the judgment in favor of the FDOC, arguing that he was not provided with a fair opportunity to conduct discovery, but even with limited discovery, he established an issue of material fact sufficient to survive summary judgment. Further, Smith argues that he should have been permitted to amend his complaint and, due to the difficulty he faced in conducting discovery, should have been appointed counsel.[5]

## II.    STANDARDS OF REVIEW

We review a district court's refusal to grant a continuance of a summary judgment motion in order to conduct discovery for abuse of discretion. *Burks v. Am. Cast Iron Pipe Co.*, 212 F.3d 1333, 1336 (11th Cir. 2000). A district court's grant of a motion for summary judgment is reviewed *de novo*, and this Court uses the same legal standards as the district court. *Id.* Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of fact and compels judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

A court's appointment of counsel in a civil case is warranted only in exceptional circumstances, and whether such circumstances exist is committed to the district court's discretion. *Steele v. Shah*, 87 F.3d 1266, 1271 (11th Cir. 1996).

---

[5] After Smith filed a *pro se* brief on appeal, this Court appointed Attorney Neil Schuster as counsel for the appellant. We applaud Mr. Schuster for his *pro bono* work in submitting additional briefs and orally arguing this case. We hope that either he or someone like him is appointed as counsel for Smith during the additional proceedings.

The trial court has broad discretion in making the determination. *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999). This Court reviews a district court's denial of a motion to amend a complaint for abuse of discretion, although the underlying legal conclusion of whether a particular amendment to the complaint is futile is reviewed *de novo*. *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).

### III.    DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of showing the court . . . that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by depositions, documents, affidavits, interrogatory answers, or other materials that specific facts exist demonstrating a genuine issue for trial. *Celotex*, 477 U.S. at 324.

For an inmate to prevail on a retaliatory transfer claim, he must establish that (1) he engaged in constitutionally protected conduct; (2) the defendant's retaliatory act adversely affected the protected conduct; and (3) there is a causal connection between the retaliatory act and the adverse effect on the conduct. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). Once the plaintiff establishes that

7

the protected conduct was a motivating factor behind the harm, the burden of production shifts to the defendant. *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008). The defendant can prevail on summary judgment if it can show it would have taken the same action in the absence of the protected activity. *Id.*

In the present case, only the causal connection element is in question. To support his claim that the transfers were retaliatory, Smith attached inmate affidavits to his complaint and his response to the FDOC's motion for summary judgment. These affidavits established, among other things, that Smith and other inmates were transferred immediately after filing lawsuits and/or grievances, and inmates who filed lawsuits and grievances were transferred more often than the average inmate. When viewing the evidence, including the affidavits, in the light most favorable to Smith, he sufficiently established that one could conclude that the protected conduct was a motivating factor behind the transfers.

To rebut Smith's claims that the protected conduct was a motivating factor in his transfer, the FDOC submitted affidavits from employees stating that Smith was transferred for the non-retaliatory reason of "population adjustment," and the employees who affected the orders had no knowledge of Smith at the time he was transferred from MCI. While it attempted to establish an innocuous reason for Smith's transfer, the FDOC failed to present any evidence as to why Smith was included in the group of 50 inmates transferred from MCI for the purpose of

8

"population adjustment."[6]  The FDOC failed to show that Smith still would have been transferred in the absence of his filing the lawsuits; thus, there remains an unresolved question of material fact and summary judgment was improper.

In addition, the trial court abused its discretion by granting summary judgment on insufficiency-of-evidence grounds when Smith was effectively blocked from gathering essential evidence.  Summary judgment is premature when a party is not provided a reasonable opportunity to discover information essential to his opposition.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986); Fed. R. Civ. P. 56(d).  This Court previously held that Smith's complaint stated a cause of action alleging a widespread practice and custom of transferring inmates in retaliation for exercising their First Amendment rights.  *Smith*, 318 F. App'x at 728.  As Smith sufficiently stated a plausible cause of action, he is entitled to some meaningful discovery.[7]  *See, e.g., Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (ruling that while Fed. R. Civ. P. 26 grants discretion to courts to limit discovery, once a plaintiff satisfies the threshold legal issues and

---

[6] The FDOC submitted evidence that transfers for population adjustment are permitted under statute and policy to meet prison needs, including preserving medical resources and security. However, no evidence was submitted stating what prison need required that Smith, as opposed to any other inmate, be transferred.  Thus, there remains a fact-question as to why Smith was included in the group of 50 inmates transferred from MCI.  Someone selected 50 inmates for transfer, Smith is entitled to know how and why these selections were made.

[7] Relevant discovery in this case would necessarily include facts related to other inmates because "[t]o establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice."  *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986).

9

states a viable claim, "the plaintiff ordinarily will be entitled to some discovery."). If the nonmovant shows it cannot present facts essential to justify its opposition, the district court may defer judgment, deny the motion, allow time for additional discovery, or issue any other appropriate order.  Fed. R. Civ. P. 56(d).

Smith sought to communicate with inmates who had previously reported or complained about being transferred in retaliation for filing grievances and complaints.[8]  The FDOC's blocking of Smith's communication with these identified inmates clearly prevented Smith from being able to present relevant and essential facts.[9]  In his response to the FDOC's motion for summary judgment, Smith moved for a stay until discovery was complete, specifically stating he was not provided with his deposition transcript and other evidence was not produced.

---

[8] Smith was not on a witch hunt, but identified specific inmates and articulated reasons to expect these inmates possessed information relevant to Smith's claim.  Our analysis may have been different had Smith been unable to identify the inmates or requested the FDOC to create the list.

[9] This Court recognizes that prison security is a legitimate concern of the FDOC and the FDOC has an interest in limiting communication between inmates.  However, because the FDOC did not act entirely straightforward during discovery, the FDOC's intentions in blocking Smith's communication are called into question.  For example, the FDOC did not provide Smith with his deposition transcript, waiting until after Smith filed his response to the summary judgment motion to file a notice with the court.  The notice stated only that the FDOC did not provide the transcript because it did not order the transcript.  In its reply to its motion for summary judgment, the FDOC then claimed it was an immaterial technicality not to provide Smith the transcript.  This is despite the court order requiring the FDOC provide the transcript to Smith **and** promises by counsel for the FDOC at the conclusion of the deposition that the transcript would be provided to Smith.  Because of the FDOC's suspect conduct, we are not convinced that prison security was at the heart of its decision not to allow Smith to communicate with the identified inmates.  Regardless, the security threat will be alleviated by appointing Smith counsel and allowing counsel to communicate with the identified prisoners, thereby negating concerns of direct contact between inmates.

10

Under the more lenient standards afforded to *pro se* litigants,[10] Smith made a sufficient showing – through this response and his previous motions to compel – to the district court that he was unable to present essential facts in support of his opposition to summary judgment.  Thus, the court abused its discretion by prematurely granting summary judgment and we remand this case so that the parties may conduct additional discovery.

Furthermore, while civil plaintiffs have no right to counsel, the appointment of counsel is appropriate in exceptional circumstances.  *Dean v. Barber*, 951 F.2d 1210, 1216 (11th Cir. 1992).  "The key is whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the court." *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993).  In the present case, Smith alleged a widespread practice of retaliatory transfers by the FDOC, not simply incidents he personally experienced.  *Cf. Fowler v. Jones*, 899 F.2d 1088, 1096 (11th Cir. 1990) (finding no exceptional circumstances, when, among other factors, the plaintiff's claims were based on incidents mostly witnessed by himself).  The discovery issues and the suspect conduct of the FDOC also hindered Smith's ability to present the essential merits of his case.  Appointment of counsel would alleviate the security concerns related to Smith directly interviewing other inmates, as well as help sharpen the issues – potentially shortening the trial and assisting in a just

---

[10] *See, e.g., Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

determination.[11]  While no single factor requires appointment of counsel, in the aggregate, this case presents exceptional circumstances that necessitate appointment of counsel.

As for Smith's attempts to amend his complaint, we cannot conclude that the trial court abused its discretion in denying Smith's motions.  However, on remand, if Mr. Schuster – or whoever is appointed as Smith's counsel – determines an amendment to Smith's initial complaint is proper, appropriate action could be taken.

## IV.    CONCLUSION

To recapitulate, summary judgment was improper because a question of material fact existed as to the reason Smith was included among the inmates transferred from MCI.  Additional time for discovery is also required to allow the parties to gather essential evidence related to the alleged widespread practice of retaliatory transfers.  Finally, due to the complexities of Smith's claims, the discovery issues he faced, and the conduct of the FDOC, exceptional circumstances exist that require the appointment of counsel for Smith.

---

[11] This Court has often looked to the factors outlined in *Ulmer v. Chancellor*, 691 F.2d 209 (5th Cir. 1982) for guidance in determining if exceptional circumstances warrant appointment of counsel.  *See, e.g., Fowler*, 899 F.2d at 1096; *Steele*, 87 F.3d at 1271.  The *Ulmer* factors cut in favor of appointing counsel for Smith, including "whether the indigent is in a position to investigate adequately the case" and "whether the appointment of counsel would be a service to [the plaintiff] . . . the court and defendant as well, by sharpening the issues in the case, shaping the examination of witnesses, and thus shortening the trial and assisting in a just determination." *Ulmer*, 691 F.2d at 213.

Accordingly, the order of the district court granting summary judgment dismissing Smith's claims is reversed. The district court shall appoint counsel for Smith. The case is remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED** with instructions.