[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11229
Non-Argument Calendar
_____

D.C. Docket No. 9:17-cv-80178-KAM


JOEL BARCELONA,

Plaintiff-Appellant,

versus

SERGEANT PARISH,
South Bay Correctional Facility,
OFFICER JONES,
South Bay Correctional Facility,
OFFICER MAGGIRT,
South Bay Correctional Facility,
NURSE CHANU,
South Bay Correctional Facility,
NURSE KELLY,
South Bay Correctional Facility,
WARDEN,
FLORIDA DEPARTMENT OF CORRECTIONS,

Defendants-Appellees,

LIEUTENANT WILSON,
South Bay Correctional Facility,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 30, 2021)

Before JILL PRYOR, BRANCH, and LUCK Circuit Judges.

PER CURIAM:

Joel Barcelona, proceeding *pro se*, sued several Florida prison officials under 42 U.S.C. § 1983, alleging that they were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment.  The district court granted summary judgment to the defendants.  With the benefit of counsel, Barcelona appeals that order.  He also argues that the district court erred in dismissing his deliberate indifference claim against an officer without first giving him an opportunity to amend his complaint and that the district court abused its discretion in denying his motion for appointment of counsel.  After careful consideration, we affirm.

## I.      Background

Barcelona is a former inmate at Florida's South Bay Correctional Facility ("South Bay").  Barcelona filed a *pro se* 42 U.S.C. § 1983 complaint against four

2

individual employees at South Bay, Nurses Chunnu,[1] Nurse Kelly,[2] Sergeant Parrish, and Officer Jones.  He alleged that, while he was incarcerated at South Bay, these defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment.

Barcelona's complaint alleged the following pertinent facts.  On the morning of April 25, 2016, he "suffered . . . chest paint and shortness of breath" and "nearly collapse[d]."  Believing that he was facing "a life threatening illness," Barcelona "declared [a] medical emergency."  Nurse Chunnu allegedly told Barcelona that "everything [was] normal" and that "you are not sick . . . . [y]ou lied to me" before sending Barcelona back to his cell.  The next morning on April 26, 2016, Barcelona complained of the same symptoms, but Nurse Chunnu again stated that he "lied to her" and that he did "[not] have . . . chest pain [or] shortness of breath."  After determining that he was "not sick," Nurse Chunnu sent Barcelona back to his cell.  Once more, on the morning of April 27, 2016, Barcelona complained of "extreme chest pain and shortness of breath" and asked Nurse Kelly to call 911.  He "was assessed by Nurse [Kelly]" who told him that he "lied to [her]," he was

---

[1] We note that Barcelona's *pro se* complaint named "Nurse Chanu" as a defendant.  We will use the correct spelling of her name: "Chunnu."

[2] Barcelona's complaint also referred to "Nurse Major," who was later identified as Nurse Kelly.

"not sick," and he had "no chest pain" or "shortness of breath." Nurse Kelly declined to call 911 and sent Barcelona back to his cell.

About an hour later, some South Bay correctional officers were inspecting prison cells when they noticed that Barcelona was "lying down on [his] bed suffering severe chest pain and shortness of breath." The officers called "medical emergency," which prompted Nurses Kelly and Chunnu to arrive at Barcelona's cell. Nurse Chunnu allegedly said "you again," accused Barcelona of lying, and stood by her previous diagnoses that Barcelona was not experiencing chest pains or shortness of breath.

Later that afternoon, a South Bay medical doctor determined that Barcelona should see a doctor, and South Bay officials transported Barcelona to Lakeside Medical Center ("Lakeside"). At Lakeside, "at least five doctors at the E.R." diagnosed Barcelona with a duodenal ulcer that caused "stomach bleeding," low blood pressure, and a loss of blood. Barcelona was given I.V.s, oxygen, and a blood transfusion. On April 29, 2016, doctors performed a surgical procedure to stop the stomach bleeding.

On the afternoon of April 30, 2016, Sergeant Parrish, Officer Jones, and one additional correctional officer arrived at Lakeside, told Barcelona that "we are leaving," and ordered a Lakeside nurse to remove Barcelona's I.V.s and oxygen tube. As the officers were leaving with Barcelona, a doctor allegedly chased down

4

the officers and asked them "what happened?"  When Barcelona asked the doctor

for medication to treat his chest pain and shortness of breath, the doctor indicated

that he could not prescribe medications but would see Barcelona for a "follow up"

in two months.  Barcelona alleged that Sergeant Parrish—rather than any doctor at

Lakeside—ordered his discharge.

After Barcelona returned to South Bay, a prison nurse stated that, "we [did]

not expect[] you to come back today."  Barcelona was placed in the South Bay

infirmary and continued to suffer chest pain and shortness of breath.  On May 12,

2016, a prison doctor informed him that "everything [was] O.K." and that he could

return to his cell.

Barcelona continued to complain of chest pain and shortness of breath,

which led to several follow up visits to prison medical staff.  On May 18, 2016, a

South Bay nurse performed an electrocardiogram and informed Barcelona that

"everything [was] normal."  On May 23, 2016, a South Bay doctor prescribed

medications and vitamins.  And on May 25, 2016, a South Bay doctor X-rayed

Barcelona, though he never received the results of that test.  The doctor who

performed the X-ray told Barcelona that he should have been kept at Lakeside "for

at least 9 days for a full recovery."

Barcelona was eventually transferred from South Bay to another facility,

allegedly because South Bay officials wanted to "avoid medical responsibility."

Based on these events, Barcelona alleged that Chunnu and Kelly were deliberately indifferent to his serious medical needs by refusing to treat his chest pain and shortness of breath. Barcelona also alleged that Sergeant Parrish and Officer Jones were deliberately indifferent to his serious medical needs by forcibly removing him from Lakeside before he had been properly discharged.

The defendants moved for summary judgment. Sergeant Parrish and Officer Jones supported their motion with medical records from both South Bay and Lakeside. Those medical records indicated that: (1) at 11:45 a.m. on April 30, 2016, Barcelona was ready "for discharge back to Correctional Facility, officers were made aware" and that a Lakeside doctor "spoke with [Barcelona]" around 1:15 p.m. before he was "[d]ischarged . . . to correctional facility accompanied by 2 officers"; (2) prior to discharge, Barcelona was in "stable" condition and was prescribed medication; and (3) Barcelona was in "stable" condition upon returning to South Bay.[3] Sergeant Parrish and Officer Jones argued that there was no evidence that they were subjectively aware of any serious medical need when they removed Barcelona from Lakeside, and that Barcelona's medical records from South Bay confirm that Barcelona's discharge was not premature.

---

[3] The records also indicate that a Lakeside doctor spent 30 minutes with Barcelona on April 29, 2016. The doctor "recommend[ed] monitoring hgb today and reassessing tomorrow for potential d/c." In other words, the Lakeside medical staff anticipated that Barcelona would likely be discharged on April 30, 2016.

6

Nurses Chunnu and Kelly also relied on Barcelona's medical records in their motion for summary judgment. They noted that there was no record evidence that either of them interacted with Barcelona on April 25, 2016. Next, they relied on South Bay records to show that Barcelona was: (1) treated by a different nurse on April 26, 2016, who assessed Barcelona,[4] performed diagnostic tests, made a plan to "notify clinician," and instructed Barcelona "to return if his symptoms return[ed] or worsen[ed], or if he develop[ed] any new symptoms"; and (2) was assessed by Nurse Kelly on the morning of April 27, 2016 for "dizziness," who concluded that "no treatment [was] required" and again instructed Barcelona "to return if his symptoms return[ed] or worsen[ed], or if he develop[ed] any new symptoms"; and (3) a different nurse also saw Barcelona on the afternoon of April 27, 2016 for complaints of dizziness and worsening chest pain, and ordered that Barcelona be "sen[t] to emergency room for further evaluation." Nurses Chunnu and Kelly argued that there was no evidence that either of them refused to see Barcelona or were deliberately indifferent to his serious medical needs.

Barcelona's opposition to the defendants' motions recited nearly identical facts and allegations to those in his complaint. Barcelona maintained that on April 26, 2016, he complained of chest pain and shortness of breath, and Nurse Chunnu

---

[4] Notably, the medical records included no report of chest pain or shortness of breath on this date. Rather, on April 26, 2016, Barcelona complained of "black, tarry stools" since the day before.

7

insisted that "everything was normal" and accused him of lying. He also contended that Nurse Kelly refused to call 911 and called him a liar. As to Sergeant Parrish and Officer Jones, Barcelona identified a single Lakeside discharge form from the record with his name on it that lacked a physician's signature as evidence that Sergeant Parrish and Officer Jones removed him from Lakeside without authorization. Accordingly, Barcelona argued that genuine issues of material fact precluded summary judgment in favor of the defendants.

A magistrate judge recommended ultimately granting summary judgment to the defendants. The district court adopted that recommendation.

Barcelona timely appealed.

## II.    Discussion

Barcelona argues that the district court erred in granting summary judgment to the defendants because there are genuine disputes of material fact concerning whether the defendants were deliberately indifferent to his serious medical needs. Barcelona also contends that the district court should have granted him leave to amend his complaint. Finally, Barcelona argues that the district court abused its discretion when it denied his motion for appointment of counsel. Barcelona's arguments lack merit.

A. Summary Judgment

Barcelona contends that Nurse Chunnu was deliberately indifferent to his serious medical needs because she knew that he was having chest pain and shortness of breath and repeatedly refused to treat him.  And, according to Barcelona, Nurse Chunnu's denial that she refused to treat him created a genuine issue of material fact for a jury.[5]  Barcelona also argues that Sergeant Parrish and Officer Jones were deliberately indifferent because they removed him from Lakeside before he had been properly discharged.  Barcelona submits that their denial of Barcelona's version of events surrounding his removal from Lakeside create a genuine issue of material fact for a jury.  We disagree and conclude that the defendants were entitled to summary judgment based on undisputed facts in the record.

We review a district court's grant of summary judgment *de novo* and apply the same legal standards as the district court.  *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013).  "Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no

_____

[5] Barcelona's counseled brief does not argue that summary judgment was improperly granted to Nurse Kelly.  A party "abandons a claim when he either makes only passing references to it [in his opening brief] or raises it in a perfunctory manner without supporting arguments and authority."  *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).  Barcelona makes only passing references to Nurse Kelly in his initial brief, none of which can be construed as a colorable argument that summary judgment should be reversed as to Nurse Kelly.  Accordingly, Barcelona's claim against Nurse Kelly has been forfeited.

genuine issue of fact and compels judgment as a matter of law." *Id.*; *see* Fed. R. Civ. P. 56(a).

The Eighth Amendment forbids "cruel and unusual punishments." U.S. Const. amend. VIII. A state actor's "deliberate indifference to serious medical needs of prisoners" constitutes cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish an Eighth Amendment claim for deliberate indifference to a serious medical need, a plaintiff must satisfy three elements. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). First, the plaintiff must show that he had an objectively serious medical need. *Id.* "[A] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (1994) (quotation omitted), *overruled in part on other grounds in Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002); *see also Andujar v. Rodriguez*, 486 F.3d 1199, 1203 (11th Cir. 2007) (same). "[T]he medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotation omitted) (alteration adopted).

Second, a plaintiff must show that a prison official acted with deliberate indifference to his serious medical need. *Goebert*, 510 F.3d at 1326. Deliberate indifference involves: "(1) subjective knowledge of a risk of serious harm;

10

(2) disregard of that risk; (3) by conduct that is more than mere negligence."

*McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). Subjective knowledge

of a risk of serious harm is satisfied only if the official is "aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists,

and he must also draw the inference." *Farrow*, 320 F.3d at 1245 (quotation

omitted). "Medical treatment violates the eighth amendment only when it is so

grossly incompetent, inadequate, or excessive as to shock the conscience or to be

intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th

Cir. 1991) (quotation omitted). "Mere incidents of negligence or malpractice do

not rise to the level of constitutional violations." *Id.* Similarly, a difference of

opinion between a prison's medical staff and the inmate as to the inmate's

diagnosis or course of treatment cannot support a deliberate indifference claim.

*Id.*; *see Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a

constitutional violation merely because the victim is a prisoner.").

    And third, a plaintiff must show that their injury was caused by prison

official's wrongful conduct. *Goebert*, 510 F.3d at 1326. This element requires a

link between the injury and the constitutional violation. *Id.* at 1327.

    The district court properly granted summary judgment to Nurse Chunnu. It

is undisputed that Barcelona's ulcers posed a serious medical need. *See Rouster v.*

*Cty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014) (holding that a duodenal ulcer

11

condition was "a serious, indeed dire, medical need"); *Barcelona v. Parish*, 750 F. App'x 841, 844 (11th Cir. 2018) (explaining in the context of another § 1983 case describing Barcelona's ulcers as "life-threatening" prior to surgery). And because we must view the evidence in the light most favorable to Barcelona and cannot resolve conflicting testimony, we accept Barcelona's contentions that Nurse Chunnu saw Barcelona on April 25, 26, and 27, and that she accused him of lying about his medical condition on those same dates. *See Smith*, 713 F.3d at 1063 (explaining that we view the summary judgment evidence "in the light most favorable to the nonmoving party"); *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) ("We may not weigh conflicting evidence or make credibility determinations of our own." (quotation omitted) (alteration adopted)).

Nevertheless, undisputed record evidence shows that Barcelona cannot succeed on his deliberate indifference claim against Nurse Chunnu. First, Barcelona's own complaint and opposition to summary judgment concede that Nurse Chunnu saw Barcelona on April 25–27 and determined that he was "not sick," "everything was normal," and that he did not suffer chest pain or shortness of breath. In other words, Nurse Chunnu assessed Barcelona's condition on those days. And Barcelona cannot show that Nurse Chunnu's assessments amounted to more than negligence or malpractice, which is required to succeed on a deliberate indifference claim. *See Harris*, 941 F.2d at 1505 ("Mere incidents of negligence or

12

malpractice do not rise to the level of constitutional violations."). It is insufficient to suggest, as Barcelona does, that a prison official erred in her diagnosis. *See id.* ("[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [cannot] support a claim of cruel and unusual punishment."); *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1273 (11th Cir. 2020) (same). Thus, Barcelona has failed to show that Nurse Chunnu acted with deliberate indifference.

Even assuming that Barcelona is correct that Nurse Chunnu refused to render any care when she knew of his serious condition, the undisputed evidence shows that Nurse Chunnu did not cause his injury. *See Goebert*, 510 F.3d at 1326. Barcelona has failed to allege any facts to show that Nurse Chunnu's alleged refusal to treat him on April 25 resulted in the ulcers that were later treated at Lakeside, worsened those ulcers, or resulted in any other subsequent injury. Moreover, the record evidence demonstrates that Barcelona was assessed by—and received a battery of tests from—prison nurses other than Nurse Chunnu on April 26 and 27. Therefore, even if Nurse Chunnu refused to treat Barcelona, other nurses did treat him. And Barcelona never disputed this evidence in his opposition to Nurse Chunnu's motion for summary judgment. Accordingly, Barcelona failed to establish a deliberate indifference claim against Nurse Chunnu, and the district court did not err in granting summary judgment to her.

Barcelona's deliberate indifference claim against Sergeant Parrish and Officer Jones likewise fails for the simple reason that he has not established that he had an objectively serious medical need when the officers removed him from Lakeside.  Barcelona's fundamental claim is that Sergeant Parrish and Officer Jones ordered a nurse to remove his I.V.s and oxygen tube and removed him from Lakeside before he had been properly discharged.  But Sergeant Parrish and Officer Jones removed Barcelona from the hospital after Lakeside doctors performed a surgical procedure to treat Barcelona's stomach ulcers.  And Barcelona never disputed the defendants' record evidence that showed that he was in stable condition at Lakeside and South Bay upon his return.  Although Barcelona claims that a South Bay doctor stated that he should have remained at Lakeside for nine days to recover from his surgery, Barcelona nevertheless fails to show that he suffered from a serious medical need after his removal from Lakeside.  *See Farrow*, 320 F.3d at 1243 ("[T]he medical need must be one that, if left unattended, poses a substantial risk of serious harm." (quotation omitted) (alteration adopted)).  To succeed on his deliberate indifference claim against Sergeant Parrish and Officer Jones, Barcelona had to show that he had a serious medical need.  *See Goebert*, 510 F.3d at 1326.  Because he has not done so, the district court did not err in granting summary judgment to Sergeant Parrish and Officer Jones.

14

B. Leave to Amend

Next, Barcelona argues that the district court erred in failing to give him an opportunity to amend his complaint.  Barcelona asserts that he should have been given leave to amend his complaint to develop allegations against an additional defendant, Officer Wilson, and to add allegations against South Bay defendants in their official capacities for an alleged pattern or practice of refusing to declare that an inmate was experiencing a medical emergency unless the inmate was in extreme pain.  We disagree.

Generally, "a district court must grant a plaintiff at least one opportunity to amend their claims before dismissing them if it appears a more carefully drafted complaint might state a claim upon which relief can be granted even if the plaintiff never seeks leave to amend." *Silva v. Bieluch*, 351 F.3d 1045, 1048–49 (11th Cir. 2003).  But that principle "does not apply if the claim is patently frivolous or if amendment would be futile." *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011).  A party may amend a complaint "once as a matter of course" within 15 days of serving its pleading or within 21 days of a responsive pleading.  Fed. R. Civ. P. 15(a).  Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." *Id.*

15

The district court screened Barcelona's complaint under 28 U.S.C. § 1915.[6] In so doing, it noted the requirement that it could not dismiss a *pro se* plaintiff's complaint at the screening stage without granting him leave to amend, unless leave to amend would be futile. It then dismissed Barcelona's claim against Officer Wilson in his individual capacity. Barcelona had alleged that Officer Wilson was present on April 27, 2016, when Nurse Kelly was allegedly deliberately indifferent to Barcelona's serious medical needs. By acknowledging the requirement that the district court was required to afford Barcelona an opportunity to amend unless such amendment would be futile and then dismissing the claim against Officer Wilson for failure to state a claim upon which relief could be granted, the district court implicitly determined that amendment would be futile. We conclude that the district court did not err in failing to grant Barcelona leave to amend because it does not "appear[] a more carefully drafted complaint might state a claim upon which relief can be granted." *Silva*, 351 F.3d at 1048–49.

Barcelona fails to identify any theory under which he could show that Officer Wilson was deliberately indifferent. That omission should not come as a surprise. Barcelona would have to show a causal connection between Officer Wilson's mere presence in the same room as Nurse Chunnu and his injury. But as

---

[6] District courts are required to screen complaints filed by plaintiffs proceeding *in forma pauperis* and "dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2).

16

we have explained, there is no causal connection between Nurse Chunnu's conduct and his injury, and we have found no authority to support a claim against a nearby prison official when it is doubtful that he had reason to second-guess a medical professional's assessment or authority to override her medical judgment. Accordingly, it does not "appear[] [that] a more carefully drafted complaint might state a claim upon which relief can be granted." *Silva*, 351 F.3d at 1048–49.

Relatedly, Barcelona argues that the district court erred in dismissing his claims against the defendants in their official capacity because he sufficiently pleaded a pattern or practice of deliberate indifference because he asserted in his complaint that FDOC: (1) had a "protocol" of declaring a medical emergency only when an inmate was "non[-]responsive[,] not breathing[,] or dead," and (2) transferred him to another facility to "avoid medical responsibility." Alternatively, he argues that even if his allegations were insufficient, he should have been afforded an opportunity to amend the complaint to state a pattern or practice claim. As an initial matter, Barcelona forfeited this argument by failing to raise it in his objections to the magistrate judge's report & recommendation. *See Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1191 (11th Cir. 2020) ("[A] party who fails to object to a magistrate judge's report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." (quotation omitted)). Even

17

if this argument had not been forfeited, it still fails. As Barcelona's own case illustrates, he was able to invoke his own medical emergency status despite not being incapacitated or deceased. Moreover, "'[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability' against a municipality." *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality)). Here, Barcelona alleges only facts particular to his case.

C. Appointment of Counsel

Finally, Barcelona argues that the district court abused its discretion when it denied his request for appointment of counsel. We disagree.

"Appointment of counsel in a civil case is not a constitutional right." *Fowler v. Jones*, 899 F.2d 1088, 1096 (11th Cir. 1990). "The appointment of counsel is instead a privilege that is justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner." *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987). "[W]hether such circumstances exist is . . . committed to district court discretion." *Steele v. Shah*, 87 F.3d 1266, 1271 (11th Cir. 1996) (quotation omitted). Barcelona's case does not present exceptional circumstances. His complaint did not raise novel or complex issues of law, and his claims are based on incidents that he witnessed. *See Fowler*, 899 F.2d at 1096 (finding no abuse of

18

discretion in declining to appoint counsel when the "plaintiff's claims are relatively straightforward and involve incidents which took place in the prison, most of which plaintiff witnessed himself").  Accordingly, the district court did not abuse its discretion by denying Barcelona appointment of counsel.

### III.    Conclusion

For these reasons, we **AFFIRM** the district court.

**AFFIRMED.**