[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-11431

Non-Argument Calendar

_____

JOSE MONTALBAN,

Plaintiff-Appellant,

*versus*

CHARLES E. SAMUELS, JR., et al.,

Defendants,

JOHN DOE,
S.I.S. Officers,
FNU BOLEY,
FNU SMITH,

2                    Opinion of the Court                    21-11431

Case Manager B Unit, et al.,

                                                Defendants-Appellees.

                    _____

              Appeal from the United States District Court
                   for the Middle District of Florida
                D.C. Docket No. 5:16-cv-00405-TPB-PRL

                    _____

Before JILL PRYOR, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

       Jose Montalban, a federal prisoner, appeals from the district
court's grant of a motion to dismiss his third amended complaint
alleging violations of his First, Fifth, Sixth, Eighth, and Fourteenth
Amendment rights, which he asserted under *Bivens v. Six Un-*
*known Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388
(1971), and its denial of his post-judgment motion for reconsidera-
tion.  In his suit, Montalban had alleged that the defendants con-
spired and retaliated against him; subjected him to deliberate indif-
ference to his medical needs; deprived him of his liberty and prop-
erty; and violated his First, Sixth, Fifth and Fourteenth Amendment
rights while he was detained at two prison facilities.  On appeal, he
argues that a magistrate judge erred in denying his motions for ap-
pointment of counsel and to compel discovery.  He also argues that

the district court erred in dismissing his claims on the ground that he failed to exhaust his administrative remedies, because the defendants' actions rendered his remedies unavailable to him. Additionally, he argues that the court erred in dismissing his First, Fifth, Sixth, and Fourteenth Amendment claims on the basis that he did not have a *Bivens* remedy for those claims. He further argues that the court erred in finding that the defendants were entitled to qualified immunity as to his Eighth Amendment claim because they were deliberately indifferent to his serious medical needs. Finally, he argues that the court erred in denying his motions to file extra pages and for reconsideration.[1]

We address each point in turn.

## I.

When appropriate, we will review a district court's denial of a motion for appointment of counsel for abuse of discretion. *DeJesus v. Lewis*, 14 F.4th 1182, 1202 (11th Cir. 2021). In addition, a district court's discovery decisions are normally reviewed for abuse of discretion. *United States v. R&F Properties of Lake Cnty., Inc.*, 433 F.3d 1349, 1355 (11th Cir. 2005).

When a magistrate judge rules on a non-dispositive pretrial matter, however, a party must object to the order within 14 days,

---

[1] Although Montalban originally named a large number of individuals as defendants, he listed only nine defendants in his third amended complaint, plus two John Does. One of the defendants died and is no longer a party to this appeal.

4                     Opinion of the Court                    21-11431

and "may not assign as error a defect in the order not timely ob-
jected to." Fed. R. Civ. P. 72(a). We have held that "appellate
courts are without jurisdiction to hear appeals directly from federal
[magistrate judges]." *United States v. Schultz*, 565 F.3d 1353, 1359
(11th Cir. 2009). We have also concluded that "where a party fails
to timely challenge a [magistrate judge's] nondispositive order be-
fore the district court, the party waive[s] his right to appeal those
orders in this Court." *Smith v. School Bd. of Orange Cnty.*, 487
F.3d 1361, 1365 (11th Cir. 2007).

Here, Montalban's challenges to the denial of his motions
for appointment of counsel and to compel discovery fail. Each of
Montalban's motions were ruled on by the magistrate judge, and
he did not object to them before the district court. Accordingly,
appellate review of such claims is precluded. *See Schultz*, 565 F.3d
at 1359; *Smith*, 487 F.3d at 1365.[2]

---

[2] Further, even if review is permissible and appropriate, we conclude that
Montalban has not shown that the district court abused its discretion in deny-
ing these motions. Montalban presents no argument that exceptional circum-
stances warranted appointment of counsel, and the magistrate judge noted
that counsel would be appointed if it later became necessary. *Smith v. Fla.
Dept. of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013). Additionally, the magis-
trate judge was within its discretion to deny Montalban's motions to compel
discovery. Permitting discovery while the motion to dismiss the case for qual-
ified immunity was pending would have been inappropriate, as that defense,
if meritorious, would render further discovery unnecessary. *Saucier v. Katz*,
533 U.S. 194, 200 (2001) (holding when a defendant seeks qualified immunity,
"a ruling on that issue should be made early in the proceedings so that the
costs and expenses of trial are avoided where the defense is dispositive.").

II.

We review *de novo* a district court's interpretation and application of the exhaustion requirement under 42 U.S.C. § 1997e(a). *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015). To the extent that the district court makes specific factual findings, we review those findings for clear error, but will otherwise accept as true the facts set forth in the complaint and draw all reasonable inferences in the plaintiff's favor. *Id.* Exhaustion should be decided on a Rule 12(b) motion to dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008). On a motion to dismiss for failure to exhaust, the district court may consider facts outside of the pleadings to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record. *Id.* at 1376.

In 1995, Congress enacted the Prison Litigation Reform Act ("PLRA"), which "made comprehensive changes to the way prisoner abuse claims must be brought in federal court." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1865 (2017). 42 U.S.C. 1997e(a), which was enacted as part of the PLRA, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

Further, the magistrate judge noted that discovery would be ordered if the case survived the motion to dismiss. Thus, even if appellate review is appropriate, Montalban has not shown that the district court made a clear error of judgment in denying his motions to compel discovery.

prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004).

Courts should employ a two-step process in analyzing a motion to dismiss for failure to exhaust administrative remedies. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). First, the district court should analyze the factual allegations in the defendant's motion to dismiss and the plaintiff's response, taking the plaintiff's version of the facts as true if there is a conflict between them, and determine whether the plaintiff's complaint should be dismissed in light of those facts. *Id.* Second, if the complaint is not subject to dismissal at that stage, the district court must "make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* After making findings on the disputed issues of fact, the district court then decides whether the prisoner has exhausted his available administrative remedies. *Id.* at 1083.

The exhaustion requirement is waived when grievance procedures are unavailable such that they are not "capable of use to obtain some relief for the action complained of." *Ross v. Blake*, 578 U.S. 632, 642 (2016). We have determined that a prison official's "serious threats of substantial retaliation" against an inmate for pursuing an administrative remedy make the remedy unavailable and lift the exhaustion requirement if (1) the threat actually deterred the inmate from lodging a grievance or pursuing part of the grievance process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a

grievance or pursuing the part of the grievance process that the inmate failed to exhaust. *Turner*, 541 F.3d at 1085.

Here, the district court properly applied the *Turner* framework and concluded that Montalban failed to exhaust his available administrative remedies. The district court undertook the first *Turner* step by taking Montalban's assertions as true and finding that dismissal was not warranted under Montalban's alleged facts. *Turner*, 541 F.3d at 1082. The district court then proceeded to the second *Turner* step by reviewing the factual record and making pertinent findings. *Turner*, 541 F.3d at 1082. The district court reviewed Montalban's email communications, informal resolution forms, and formal Administrative Remedy ("AR") requests and found that Montalban did not properly proceed through the AR process. The district court correctly concluded that Montalban did not proceed through the full AR process, including an informal BP-8 request, a proper BP-9 form, a timely appeal to the regional office on a BP-10 form, and a timely appeal to the central office on a BP-11 form. 28 C.F.R. §§ 542.13(a), 542.14(a), 542.15(a). Additionally, many of Montalban's rejection notices contained instructions about how to appeal or refile a rejected request. As a result, Montalban failed to exhaust administrative remedies before filing his complaint.

Furthermore, any alleged threats or actions by the defendants did not render the administrative process unavailable to Montalban. *Ross*, 578 U.S. at 642; *Turner*, 541 F.3d at 1085. As the district court recognized, Montalban filed numerous informal and

formal grievances between July 2014 and June 2016 despite his retaliatory placement in the Special Housing Unit ("SHU"), McLean's statement that he wasn't getting his property back, and Phillips' slamming of his desk. Moreover, Montalban cannot show that the defendants impeded him from filing his remedies and receiving responses. The only remedy request rejected as untimely was a request submitted on November 2, 2015, regarding Montalban's July 2014 collarbone injury, which violated the 20-day deadline from the time of the event to file a BP-9 form. 28 C.F.R. § 542.14(a). Finally, even if Montalban did not receive responses to his requests, the AR process required him to nevertheless proceed to the next level to properly exhaust his remedies. 28 C.F.R. § 542.18.

In addition, contrary to Montalban's assertion, the district court did not err in considering materials outside the pleadings in making factual findings related to exhaustion. *Rich*, 530 F.3d at 1376. On remand, the district court provided both parties the opportunity to supplement the record, and thus Montalban had fair notice of his and the defendants' opportunity to develop the record. *Id.* Accordingly, Montalban failed to show that the district court erred in its application of the *Turner* framework and that its factual findings were clearly erroneous.

Accordingly, Montalban's *Bivens* claims fail for lack of exhaustion of administrative remedies. Nevertheless, the district court addressed Defendants' alternative arguments on the merits, and agreed with Defendants: (a) that Montalban did not have a *Bivens* remedy for his First, Fifth, Sixth, and Fourteenth

21-11431                Opinion of the Court                9

Amendment claims, and (b) that Defendants were entitled to qualified immunity on his Eighth Amendment claims.  In Parts III and IV below, we also agree with and affirm the district court on these alternative grounds.

III.

We review a district court's grant of a motion to dismiss under Rule 12(b)(6) for failure to state a claim *de novo*, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff.  *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006).

In *Bivens*, the Supreme Court held that injured plaintiffs could bring a cause of action for damages against federal officers based on violations of their constitutional rights.  *Bivens*, 403 U.S. 388, 392 (1971).  While *Bivens* involved a violation of the Fourth Amendment, the Supreme Court has allowed a *Bivens* action alleging gender discrimination under the Due Process Clause of the Fifth Amendment.  *Id*.; *Davis v. Passman*, 442 U.S. 228, 248-49 (1979).  It has also recognized a *Bivens* action for deliberate indifference to serious medical needs under the Eighth Amendment.  *Carlson v. Green*, 446 U.S. 14, 18 (1980).  These three contexts represent the only instances in which the Supreme Court has approved of an implied *Bivens* remedy.  *Ziglar*, 137 S. Ct. at 1855.

In *Ziglar v. Abbasi*, however, the Supreme Court held that *Bivens* may not be extended to a new context where special factors counsel hesitation in the absence of affirmative action by Congress.

*Id.* at 1857.  A case presents a new *Bivens* context when it is "different in a meaningful way" from previous *Bivens* cases decided by the Supreme Court.  *Id.* at 1859.

The Supreme Court has not defined the phrase "special factors counselling hesitation," but it stated that "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."  *Id.* at 1857-58.  Thus, a "special factor counselling hesitation" is one that "cause[s] a court to hesitate before answering that question in the affirmative."  *Id.* at 1858.  Generally, "if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy."  *Id.*

Here, the district court properly concluded that Montalban did not have a *Bivens* cause of action to raise his First, Fifth, Sixth, and Fourteenth Amendment claims.  Each of these claims arise in a new context, because they differ in a meaningful way from the three existing *Bivens* contexts recognized by the Supreme Court.  *Ziglar*, 137 S. Ct. at 1859.  Further, special factors counsel hesitation in extending *Bivens* in this context.  *Id.* at 1857-58.  The Supreme Court has not recognized a Bivens cause of action for claims arising under the First, Sixth, and Fourteenth Amendments.  *Id.* at 1855.  Additionally, to the extent that Montalban alleged Fifth Amendment violations in the form of compulsory self-incrimination, denial of access to the courts, and deprivation of liberty and property,

those claims were meaningfully different than the gender discrimination claim for which the Supreme Court recognized a Fifth Amendment Bivens cause of action. *Passman*, 442 U.S. at 248-49.

Further, special factors counsel hesitation in extending Bivens in this context. *Ziglar*, 157 S. Ct. at 1857-58. The BOP's AR process, which was available to Montalban, provided him an alternative means of relief that forecloses extension of a *Bivens* remedy. *Id.* at 1858. Even if we accepted as true Montalban's allegations that the AR process was unavailable to him, other factors counsel hesitation. As the Supreme Court noted in *Ziglar*, Congress had occasion to consider the matter of prisoner abuse but chose not to create a standalone damages remedy against federal prison staff. *Id.* at 1865. Thus, there are sound reasons to think that Congress might doubt the efficacy or necessity of a damages remedy for claims of prisoner abuse. *Id.* at 1858. Additionally, separation of powers concerns further counsel hesitation, as this Court has recognized that prison administration is best left to the legislative and executive branches of government. *Pesci v. Budz*, 730 F.3d 1291, 1296 (11th Cir. 2013) (recognizing that prison administration "is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government."). Thus, there is reason to believe that the judiciary is not well suited to consider and weigh the costs and benefits of allowing a damages action to proceed in this case. *Ziglar*, 137 S. Ct. at 1857-58.

Accordingly, we conclude that the district court did not err in determining that Montalban did not have a *Bivens* remedy for his First, Fifth, Sixth, and Fourteenth Amendment claims.

IV.

We review *de novo* a district court's dismissal for failure to state a claim based on qualified immunity, accepting the facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

"An official asserting the affirmative defense of qualified immunity must initially establish that he was acting within his discretionary authority." *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1136 (11th Cir. 2007). When determining whether an official acted within his discretionary authority we consider: (1) "whether the official is engaged in a legitimate job-related function"; and (2) "whether he is executing that job-related function . . . in an authorized manner." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004).

If the official was acting within his discretionary authority, the burden then shifts to the plaintiff to show that the official is not entitled to qualified immunity. *Skop*, 485 F.3d at 1136-37. To do so, the plaintiff must (1) "show that a constitutional right has been violated;" and (2) show that "the right violated was clearly established." *Roberts v. Spielman*, 643 F.3d 899, 904 (11th Cir. 2011) (quotation marks omitted).

The Eighth Amendment prohibits deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to bring a deliberate-indifference claim, a plaintiff must show "(1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Gilmore v. Hodges*, 738 F.3d 266, 273-74 (11th Cir. 2013) (quotation marks omitted).

Medical treatment only violates the Eighth Amendment when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (quotation marks omitted). The Eighth Amendment does not require medical care to be "perfect, the best obtainable, or even very good." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020). "[M]ere negligence or a mistake in judgment does not rise to the level of deliberate indifference." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1308 (11th Cir. 2009). Additionally, "a simple difference in medical opinion between the prisoner's medical staff and the inmate as to the latter's diagnosis or course of treatment" does not support a claim of deliberate indifference. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).

Here, the district court correctly concluded that the defendants were entitled to qualified immunity on Montalban's Eighth Amendment claim. The defendants were acting within the scope of their discretionary authority as prison facility employees at the time of the alleged incidents. Montalban's allegations, however,

even taken as true, failed to state an Eighth Amendment claim for deliberate indifference as to the non-medical defendants, Smith, Boley, McLean, and Heuett. Montalban informed Smith, Boley, and McLean that he needed medical care, and they advised him to go to health services and submit a BP-9 form. Montalban also alleged that Heuett denied him medical care, but he did not explain how. Accordingly, Montalban did not allege sufficient facts to show that these defendants disregarded his medical needs and acted with more than mere negligence. *Gilmore*, 738 F.3d at 274.

In addition, the district court properly concluded that Montalban failed to sufficiently allege deliberate indifference as to Dr. Nikbak. Montalban's third amended complaint alleged that Dr. Nikbak failed to diagnose his seizures, prescribed two weeks of painkillers for his collarbone injury, stated that his collarbone was healing by itself, and delayed surgery for five months. However, when Montalban informed Dr. Nikbak of his seizures, he advised Montalban that he would see him when he entered the population compound. Further, even if Dr. Nikbak was negligent in prescribing painkillers for Montalban's collarbone on grounds that the bone was healing by itself, mere negligence does not rise to the level of deliberate indifference. *Mann*, 588 F.3d at 1308. Moreover, Montalban's allegation that Dr. Nikbak delayed his surgery is contradicted by the materials he attached to his third amended complaint, showing that Dr. Nikbak submitted a request for surgery on July 23, 2014, which was granted on September 24, 2014. Thus, Montalban did not allege facts showing that Dr. Nikbak's

treatment was grossly incompetent, inadequate or excessive as to shock the conscience or be intolerable to fundamental fairness. *Keohane*, 952 F.3d at 1266. To the extent that Montalban disagreed with being prescribed painkillers for his collarbone injury, a mere disagreement does not support a claim of deliberate indifference to serious medical needs. *Harris*, 941 F.2d at 1505.

The district court also did not err in finding that Montalban failed to state a deliberate indifference claim against Dr. Tidwell. While Montalban alleged that Dr. Tidwell was hesitant to provide him treatment, he also stated that Dr. Tidwell told him to start taking medication for his seizures. Additionally, contrary to Montalban's allegation that Dr. Tidwell did not inform him of his need for plastic surgery on his right eye, Montalban's third amended complaint shows that Dr. Tidwell requested an ophthalmology procedure, and Montalban was ultimately referred for evaluation. Thus, while Montalban may have disagreed with his course of treatment, he has not alleged sufficient facts to show that Dr. Tidwell was deliberately indifferent. *Mann*, 588 F.3d at 1308.

Accordingly, as the district court found, Montalban has failed to state a claim that the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment, and the defendants are therefore entitled to qualified immunity. *Gilmore*, 738 F.3d at 274.

V.

We review a district court's application of its local rules for an abuse of discretion. *Mann*, 588 F.3d at 1302 (11th Cir. 2009). Additionally, a district court's denial of a motion for reconsideration is reviewed for an abuse of discretion. *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1254 (11th Cir. 2007).

The Middle District of Florida's local rules provide that a motion must be contained within a single document no longer than 25 pages inclusive of all parts. M.D. Fla. L.R. 3.01(a). Furthermore, a motion for leave to file a motion of more than 25 pages must not exceed 3 pages inclusive of all parts and must not include the proposed motion. *Id.*

Rule 59(e) provides that a motion to alter or amend a judgment may be filed within 28 days of the judgment's entry. Fed. R. Civ. P. 59(e). Rule 59(e) motions are granted only on the basis of newly-discovered evidence or manifest errors of law or fact. *PBT Real Estate, LLC v. Town of Palm Beach*, 988 F.3d 1274, 1287 (11th Cir. 2021).

Here, Montalban has not shown that the district court committed a clear error of judgment in enforcing its 25-page limit for motions, its 3-page limit for motions for leave to file excess pages, or its rule that proposed motions must not be included in a motion for leave to file excess pages. *Mann*, 588 F.3d at 1302; M.D. Fla. L.R. 3.01(a). Further, Montalban has failed to show that the district court abused its discretion in denying the motion for

reconsideration: while Montalban asserts that he presented newly-discovered evidence in his motion, his motion primarily raised arguments already raised in his response to the motion to dismiss and considered by the district court.  Thus, the district court was within its discretion to deny Montalban's motion for reconsideration, and we affirm.

**AFFIRMED.**